**In re Ruth E. JESSEE, Plaintiff**

v.

**FARMERS INSURANCE EXCHANGE and Farmers Group, Inc., Defendants.**

**No. 05SA370.**

Supreme Court of Colorado, En Banc.

Nov. 20, 2006.

Irwin & Boesen, P.C., Randal R. Kelly, Denver, Colorado, Trial Lawyers for Public Justice, Leslie A. Brueckner Washington, D.C., Attorneys for Plaintiff–Petitioner Ruth E. Jessee & Petitioner Irwin & Boesen, P.C.

Lambdin & Chaney, LLP, Suzanne Lambdin, Mark Honhart, Denver, Colorado, Attorneys for Defendant–Respondent Farmers Insurance Exchange.

Levy, Morse & Wheeler, P.C., Marc R. Levy, Joshua R. Proctor, Englewood, Colorado, Attorneys for Defendant–Respondent Farmers Group, Inc.

Kennedy Childs & Fogg, P.C., Ronald H. Nemirow, Denver, Colorado, Attorneys for Amicus Curiae Defense Research Institute.

Benson & Associates PC, Jesse Howard Witt, Golden, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Justice EID delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, Petitioner Ruth Jessee seeks to vacate a protective order entered by the district court pursuant to C.R.C.P. 26(c)(7). We issued an order to show cause why the requested relief should not be granted, and the parties have briefed the issue. Because we conclude that C.R.C.P. 26(c) does not authorize those portions of the protective order that purport to restrict the use of documents obtained outside of the discovery process in this case, we now make the rule absolute in part.

**I.**

Petitioner Ruth Jessee was injured in an automobile accident on June 14, 2002. After the accident, Jessee filed a claim with her insurance company, Farmers Insurance Exchange ("Farmers"),[1] for underinsured motorist (UIM) benefits under her own policy. On March 26, 2004, Jessee filed a complaint against Farmers in Adams County District

1. We note that Farmers Group, Inc. also is identified as a respondent in this action. Because Farmers Group, Inc. does not appear to have any interests different from those of Farmers Insurance Exchange that are relevant to this decision, we will refer to both entities collectively as "Farmers."

Court alleging claims for breach of contract, bad faith, and deceptive trade practices in connection with her claim for UIM benefits.

In an unrelated case against Farmers adjudicated prior to this lawsuit, a South Dakota district court had required Farmers to produce certain internal documents without a protective order.[2] A South Dakota attorney representing the plaintiff in that case provided copies of those unprotected documents to a number of parties, including Jessee's counsel, the law firm of Irwin & Boesen, P.C. Additionally, an expert witness in the South Dakota case who had obtained access to, and now possesses copies of, those unprotected documents has been retained by Jessee in this case. Farmers asserts that all of these documents are confidential and/or proprietary.[3]

During the course of this lawsuit, Jessee propounded requests for production of documents to Farmers, seeking additional documents considered confidential and/or proprietary by Farmers, including the personnel file of a former Farmers employee. When Farmers refused to produce the requested documents, Jessee filed a motion to compel their production. The district court determined that, although the documents should be produced, a protective order was warranted, and the court therefore directed the parties to prepare a mutually acceptable form. The parties were unable to reach an agreement on the form of the protective order, however, and presented the matter to the district court once again.

Jessee and Farmers submitted alternative proposals for a protective order, and the district court entered the proposed order submitted by Farmers. That order covers not only documents that were the subject of the motion to compel, but all documents to be used by the parties during the pending litigation, regardless of how and when those documents were originally acquired. The order outlines a procedure for Farmers to preliminarily designate documents as "Confidential Information," as it learns of such confidential documents throughout the litigation. Documents that are identified as Confidential Information, in addition to being subject to other restrictions, cannot be disclosed to anyone other than those persons specifically identified in the protective order—namely, the parties, their counsel, court personnel, and witnesses who must agree to be bound by the protective order before receiving Confidential Information. This last category extends the reach of the protective order to Jessee's expert who, as noted above, had copies of certain confidential documents prior to his involvement in this case. Additionally, Irwin & Boesen would be prohibited from discussing any Confidential Information with at least one other client it represents that has similar claims against Farmers.

Under the terms of the protective order, Jessee can informally challenge any confidentiality designation with Farmers and, if the parties cannot reach agreement, challenge such designation before the district court. Further, the protective order specifically contemplates the possibility that documents originally acquired by Jessee's counsel or experts outside of discovery in this case might be designated Confidential Information by Farmers.[4] For example, paragraph 11 of the protective order indicates that it applies to "documents that have been acquired from other sources" than Farmers in this lawsuit. Paragraph 11 then requires Jessee to notify Farmers of her intent to use such documents, with sufficient time to allow Farmers to seek a protective order covering those documents. Similarly, paragraph 12 of the protective order applies to all documents

---

2. The South Dakota case is captioned *Grong v. Farmers Insurance Exchange,* Fourth Judicial Circuit, Lawrence County, South Dakota, Case No. 02–0073.

3. The documents apparently contain information regarding "incentive performance compensation plans" and the Colossus claims-handling system used by Farmers. Farmers explains in its brief that "Colossus" is a proprietary computer tool created by Computer Sciences Corporation ("CSC"), and that Farmers' use of Colossus and related materials is limited by a licensing agreement and nondisclosure agreement with CSC. Such agreements with CSC are at least one reason why Farmers sought a protective order in this case.

4. Paragraphs 11 and 12 of the protective order, on which we focus, are set forth verbatim in an Appendix to this decision.

in the possession of Jessee or Irwin & Boesen, regardless of the source, "that reasonably could be considered to be the same type as those designated as Confidential Information." Paragraph 12 requires Jessee to provide those documents to Farmers within 30 days of acquisition, so that Farmers may have the opportunity to mark them as Confidential Information. Thus, the protective order entered by the district court places restrictions not only on documents obtained solely as a result of discovery in this case, but on documents originally acquired outside of the pending discovery process.

After the protective order was entered, Farmers designated 169 documents as Confidential Information. Those 169 documents include certain documents that Jessee disclosed in this case pursuant to C.R.C.P. 26(a)(1), but which her counsel had obtained from the South Dakota attorney before filing the lawsuit. In the district court, Jessee challenged Farmers' specific confidentiality designations, but those challenges have not yet been ruled on because of this pending action, and we do not address them here. In this action, Jessee challenges the protective order entered by the district court, under which Farmers made its confidentiality designations.

## II.

■ Jessee filed her petition for a rule to show cause with this Court before the district court had an opportunity to rule on her challenges to the documents identified as Confidential Information. Farmers now argues that the fact that the district court has not ruled on Jessee's challenges means that this case is not ripe for our review. We disagree.

■ The doctrine of ripeness requires "an actual case or controversy between the parties that is sufficiently immediate and real so as to warrant adjudication." *Beauprez v. Avalos,* 42 P.3d 642, 648 (Colo.2002). This Court will not consider uncertain or contingent future matters because the injury is speculative and may never occur. *Stell v. Boulder County Dep't of Social Svcs.,* 92 P.3d 910, 914 (Colo.2004).

Bearing these standards in mind, we conclude that this case is ripe for review. We specifically limit our review, however, to the propriety of the protective order entered by the district court. We decline to consider, and there is no adequate record that would allow us to consider, whether any of the specific documents identified by Farmers and challenged by Jessee were properly labeled Confidential Information. That issue is one for the district court in the first instance.

The narrower issue of the propriety of the protective order is ripe for review because it presents an actual controversy between the parties that is sufficiently real and immediate. The protective order has been entered by the district court, and Farmers is utilizing it to place constraints on how documents obtained outside of the discovery process in this case may be used. Because the protective order, which serves as the primary factual basis for our decision, has been entered by the district court and is being used by Farmers, and because there is a real dispute between the parties regarding whether it is a proper protective order, we conclude that the doctrine of ripeness does not preclude our decision.

## III.

■ Jessee argues that the protective order at issue violates both the First Amendment and C.R.C.P. 26(c). We conclude that C.R.C.P. 26(c) does not authorize those portions of the protective order that purport to restrict the use of documents originally obtained by Jessee or her counsel outside of the discovery process in this litigation, and make the rule absolute in part on that basis. Because we can resolve this case on the basis of C.R.C.P. 26(c), we decline to reach the First Amendment issue presented by Jessee. *See, e.g., Spahmer v. Gullette,* 113 P.3d 158, 161 n. 1 (Colo.2005) (noting that the Court does not reach constitutional issues where it is not necessary to do so).

### A. *C.R.C.P. 26(c)*

C.R.C.P. 26 governs the pretrial disclosure and discovery process. As particularly relevant here, C.R.C.P. 26(c) authorizes the en-

try of protective orders under certain conditions specified in the rule:

[u]pon motion by a party or by the person from whom disclosure is due or discovery is sought, ... and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

...

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way....

Here, the district court entered the protective order, citing C.R.C.P. 26(c)(7), to protect Farmers' asserted trade secrets and confidential information. We hold, however, that the protective order entered by the district court is not authorized by C.R.C.P. 26(c) to the extent that it purports to place limits on the use of documents not acquired solely as a result of discovery in this case.

■ We base our decision in this regard on the plain language of C.R.C.P. 26(c). Particularly, the rule first outlines several measures that a district court can take to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that discovery not be had in whole or in part, C.R.C.P. 26(c)(1) & (4), that discovery be had on specified terms and conditions or by certain methods, C.R.C.P. 26(c)(2) & (3), that discovery be conducted in the presence of limited persons, C.R.C.P. 26(c)(5), that trade secret information be protected, C.R.C.P. 26(c)(7), or that documents or depositions be submitted under seal, C.R.C.P. 26(c)(6) & (8). The rule then provides that, if a motion for such a protective order is denied, "the court may, on such terms and conditions as are just, order that any party or other person provide or permit *discovery*." C.R.C.P. 26(c) (emphasis added); *see also* C.R.C.P. 26(a)(5) (outlining methods of discovery); C.R.C.P. 26(b) (proscribing the scope and limits of discovery); C.R.C.P. 26(d) (specifying the timing and sequence of discovery). In this way, the language of the rule specifically limits its application to documents acquired solely as a

result of discovery conducted during the pending case.

As a leading treatise explains regarding the federal counterpart to C.R.C.P. 26(c):

The provision for protective orders in Rule 26(c) is plainly limited in its application to protection from abuses flowing from the employment of the discovery rules. Similarly, it has been held that the court may not issue an order limiting a party in the use it may make of information not acquired under the discovery rules, even though had the same information been sought through discovery the opposing party would have been entitled to a protective order.

4 James Wm. Moore et. al., Moore's Federal Practice ¶ 26.78, at 26–503 to 26–504 (2d ed.1987). Indeed, in interpreting Federal Rule of Civil Procedure 26(c)(7), federal courts have routinely limited the scope of the rule to materials acquired solely as a result of discovery in the pending case. *See, e.g., Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 944–45 (2d Cir.1983) (noting that the rule is "not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on *discovery* in order to prevent injury, harassment, or abuse of the court's processes") (emphasis in original); *Gillard v. Boulder Valley Sch. Dist. RE-2,* 196 F.R.D. 382, 387 (D.Colo.2000) ("A protective order, of course, prevents only the disclosure of information obtained solely as the result of *court sanctioned discovery.* A party is free to disseminate as it wishes information lawfully obtained through other means.") (emphasis added); *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 302 (N.D.Ill. 1993) (noting that "where information was received by Culinary, and Culinary has made no solicitation of the information, the information received is outside the *pretrial discovery process* and this Court does not have power to prevent Culinary's further dissemination of the information") (emphasis added); *In re Korean Air Lines Disaster of September 1, 1983,* 597 F.Supp. 621, 623 (D.D.C. 1984) (interpreting the analogous Federal Rule of Civil Procedure 26(c) and holding

that a protective order could limit disclosure "[o]nly of information and documents obtained or produced in the *discovery process*") (emphasis added).

We therefore conclude, as required by its plain language, that C.R.C.P. 26(c) applies only to documents or information obtained solely as a result of discovery in a pending case. It does not authorize restrictions on documents acquired outside of the discovery process in the pending case.

### B. *The Protective Order*

Here, the protective order entered by the district court contains many standard provisions that are authorized by C.R.C.P. 26(c). For example, the order permits Farmers to designate documents it produces in the case that contain trade secrets or other confidential information as Confidential Information. Confidential Information can be used only for purposes of this case, and must be filed under seal if submitted with a court filing. There are also limits on who may receive copies of Confidential Information, and a requirement that certain individuals who receive Confidential Information agree to the jurisdiction of the district court for purposes of enforcement of the protective order.

The protective order also contains, however, certain provisions that are outside of the scope of C.R.C.P. 26(c). As explained above, paragraph 11 of the protective order extends its application to documents originally acquired from other sources, and requires Jessee to notify Farmers of her intent to use such documents so that Farmers can decide whether to seek a protective order. Paragraph 12 requires Jessee to give Farmers advance notice of her intent to use documents similar to any previously designated Confidential Information, and gives Farmers a chance to designate those as Confidential Information as well. Because, as we explained above, C.R.C.P. 26(c) applies only to documents obtained solely as the result of discovery in the pending case, those provisions of the protective order are beyond the scope of what is authorized by C.R.C.P. 26(c). We hold that the district court was without authority to include provisions in the protective order placing limits on the use of documents originally obtained outside of the discovery process in this case.

In reaching this conclusion, we are mindful of the need to protect confidential and trade secret information in appropriate circumstances. Indeed, many of the provisions of the protective order at issue are appropriate under C.R.C.P. 26(c) and are properly employed in civil cases on a regular basis. There is, however, "no absolute right to hide the nature or existence of trade secrets from an opposing party." *Curtis, Inc. v. Dist. Court,* 186 Colo. 226, 230, 526 P.2d 1335, 1337 (1974). Rather, a party is constrained to the limits of C.R.C.P. 26(c)(7) in protecting its confidential and trade secret information.

It may be the case that, if Farmers were to produce the disputed documents for the first time in this case, it would be within the purview of C.R.C.P. 26(c)(7) for Farmers to designate the documents as Confidential Information. But importantly, Jessee already had acquired the documents prior to the filing of this case. Farmers produced the documents without the protections of a protective order in other litigation, and there is no indication in the record before us that Jessee obtained copies of the documents through any unlawful means. Moreover, Farmers concedes that it did not appeal the South Dakota court's order requiring production of the disputed documents without a protective order. C.R.C.P. 26(c) cannot now be used to protect that which Farmers already disclosed. *See, e.g., Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 129 F.R.D. 483, 484 (D.N.J.1990) ("As a matter of common sense, if one were truly fearful of competitive disadvantages, one would make every effort to properly safeguard information to prevent disclosure to competitors.").

We therefore hold that the protective order entered by the district court is not authorized by C.R.C.P. 26(c) to the extent that it attempts to place limits on the use of documents originally obtained outside of the discovery process in this case. We emphasize, however, that our holding is limited to interpreting the scope of the district court's authority under C.R.C.P. 26(c) to enter a protective order. Our holding does not limit

or affect the court's ability to control the "use" of documents in other contexts, including their admission at trial under the Colorado Rules of Evidence.

## IV.

For the foregoing reasons, we now make absolute in part the rule to show cause. The district court is ordered to vacate those portions of the protective order that are inconsistent with our opinion above.

## APPENDIX

11. Subject to the provisions of paragraph 12 below Plaintiff may use documents that have been acquired from other sources in this litigation. Plaintiff shall notify the Defendant of her intent to use documents acquired from other sources prior to their use in this litigation and shall produce copies of said documents to Defendant sufficiently in advance of Plaintiff's intended use to allow Defendant to seek protective order treatment for such documents if it believes such is warranted. Nothing contained in this paragraph or anything else in this Order shall be deemed a waiver by Defendant of the right to argue that any documents obtained by Plaintiff from other sources were wrongfully and/or otherwise improperly obtained (whether by Plaintiff, Plaintiff's agents, or third parties) and should be returned and/or deemed Confidential Information pursuant to the terms of this Order.

12. Any documents which Plaintiff or her counsel currently have or come into possession of that reasonably could be considered to be the same type as those designated as Confidential Information by any party pursuant to paragraph 3 above must be disclosed and produced to Defendant within 30–days of this Order or within 30 days of acquisition of any additional documents not in Plaintiff's possession at the time of this Order, but in no event less than 30–days prior to attempted use; except that, if Plaintiff obtains such documents less than 30–days prior to desired use she may seek leave of court to use such documents. If the Defendant agrees that said documents are not Confidential Information entitled to protection under this Order for any reason, then Plaintiff may use such

documents in this litigation without complying with the terms of this Order. However, if the Defendant believes that such documents are Confidential Information entitled to the protections of this Order, then it may designate such documents as Confidential Information pursuant to this Order. If Plaintiff disputes such designation(s), she shall so notify the Defendant and move the Court to determine whether said documents are entitled to continued protection under this Order. In disclosing and producing documents to Defendant pursuant to this paragraph, Plaintiff and her counsel are not obligated to disclose from what source they obtained said documents or to whom they were sent; however, Defendant does not waive any right it may have to seek such information from Plaintiff and/or her counsel pursuant to a further order of this Court or in any other appropriate forum.