**METAL MANAGEMENT WEST, INC., a Colorado corporation, d/b/a Sims Metal Management, LTD, Plaintiff–Appellant,**

v.

**STATE of Colorado; John R. Newsome, District Attorney for the 4th Judicial District of the State of Colorado; City of Colorado Springs, a municipal corporation; Terry Maketa, Sheriff of El Paso County, Colorado; Richard W. Myers, Chief of the Colorado Springs Police Department; and Colonel Mark V. Trostel, Chief of the Colorado State Patrol, Defendants–Appellees.**

No. 09CA0798.

Colorado Court of Appeals,
Div. I.

Sept. 30, 2010.

---

Jurdem, LLC, Scott Jurdem, Keely Ambrose, Boulder, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Diane Marie Dash, Senior Assistant Attorney General, Denver, Colorado, for Defendants–Appellees State of Colorado and Colonel Mark V. Trostel.

William H. Louis, County Attorney, Andrew C. Gorgey, First Assistant County Attorney, Colorado Springs, Colorado, for Defendants–Appellees John R. Newsome and Terry Maketa.

Patricia K. Kelly, City Attorney, Emily K. Wilson, Assistant City Attorney, Colorado Springs, Colorado, for Defendants–Appellees City of Colorado Springs and Richard W. Myers.

Opinion by Judge RICHMAN.

Plaintiff, Metal Management West, Inc., appeals the district court's summary judgment in favor of defendants, the State of Colorado; John R. Newsome, District Attorney for the Fourth Judicial District; the City of Colorado Springs; Terry Maketa, Sheriff of El Paso County; Richard W. Myers, Chief of the Colorado Springs Police Department; and Colonel Mark V. Trostel, Chief of the Colorado State Patrol. We affirm in part, reverse in part, and remand the case with directions.

## I. Background

The material facts are not in dispute. Plaintiff purchases scrap metal, including automobiles, in the course of its metal recycling business. Plaintiff's operations are circumscribed by sections 42–4–2202 and 42–5–105, C.R.S.2010, two separate statutes which are intended to deter automobile theft. Defendants, collectively, are law enforcement entities charged with enforcing these statutes in the jurisdiction within which plaintiff operates its business.

Section 42–4–2202 regulates the operation of motor vehicle and auto parts recyclers such as plaintiff by limiting the circumstances under which they may accept motor vehicles for recycling. Specifically, the statute provides, in pertinent part:

(1) No person who is not a licensed motor vehicle dealer shall purchase or otherwise receive a *motor vehicle* to recycle the vehicle, unless:

(a) The seller or transferor is the owner on the certificate of title, an operator, or a licensed motor vehicle dealer;

(b) The seller or transferor provides a completed bill of sale on a form prescribed by the department of revenue; or

(c) The receiver or purchaser complies with subsection (2) of this section.

(2)(a) A person other than a licensed motor vehicle dealer who purchases or otherwise receives a *motor vehicle* for the pur-

pose of recycling the vehicle shall keep the *vehicle* for seven business days before recycling. . . .

(Emphasis added.) The statute also provides that during the seven-day holding period the business must submit the vehicle identification number to a computerized system maintained by the Department of Public Safety to ascertain whether the motor vehicle is stolen. *See* §§ 42–4–2203 & –2204, C.R.S.2010.[1] Violation of this statute is a misdemeanor punishable by a fine.

The statute contains a definitions section, *see* § 42–4–2201, C.R.S.2010, but that section does not define the term "motor vehicle," which is the crux of plaintiff's complaint. However, the term is defined elsewhere in title 42 as follows:

"Motor vehicle" means any self-propelled vehicle that is designed primarily for travel on the public highways and that is generally and commonly used to transport persons and property over the public highways or a low-speed electric vehicle; except that the term does not include low-power scooters, wheelchairs, or vehicles moved solely by human power.

§ 42–1–102(58), C.R.S.2010. The introductory sentence to this definitions provision states that the listed definitions apply "in articles 1 to 4 of this title, unless the context otherwise requires." § 42–1–102, C.R.S.2010. The statute at issue is found in article 4.

Sections 42–5–101 to –113, C.R.S.2010, are separate but related statutes collectively titled the "Automobile Theft Law." Section 42–5–105 establishes recordkeeping procedures for entities that buy or sell secondhand motor vehicles or used motor vehicle parts. Referred to as the "daily record" law, it provides, in pertinent part:

(1)(a) It is the duty of every dealer, and of the proprietor of every garage, to keep and maintain in such person's place of business an easily accessible and permanent daily record of all secondhand or used motor

---

1. A prior version of the statute precluded scrap dealers from accepting motor vehicles for purposes of scrapping unless the seller was the owner or provided the bill of sale on the prescribed form. However, the statute was amended in 2007 to include the seven-day holding provision, as set forth above. The description of the statute in the district court's order of February 25, 2009 appears to refer to the prior version of the statute.

vehicle equipment, attachments, accessories, and appurtenances bought, sold, traded, exchanged, dealt in, repaired, or received or disposed of in any manner or way by or through the dealer or proprietor. . . .

(b) The record shall be kept in a good businesslike manner in the form of invoices or in a book by the dealer or proprietor and shall contain the following:

(I) A description of any and all such articles of property of every class or kind sufficient for the ready identification thereof by a peace officer;

. . .

(IV) The name, address, and a copy of the identification documentation of the driver and the owner of a *motor vehicle* received for any purpose . . .;

(V) The model year, make and style, and engine or vehicle identification number and state registration license number of *such motor vehicle* if registered. . . .

§ 42–5–105 (emphasis added). Any person violating any provision of this statute is guilty of a misdemeanor. § 42–5–105(4), C.R.S.2010.

This part of article 5 contains its own definition of "motor vehicle": "any vehicle of whatever description propelled by any power other than muscular except a vehicle running on rails." § 42–5–101(5), C.R.S.2010. It also contains a definition of "vehicle identification number": "any identifying number, serial number, engine number, or other distinguishing number or mark, including letters, if any, that is unique to the identity of a given vehicle or component part thereof that was placed on a vehicle or engine by its manufacturer . . . ." § 42–5–101(11), C.R.S.2010.

According to plaintiff's complaint, its business was negatively affected by the passage of section 42–4–2202, and its employee was criminally cited for failing to comply with the statute after he accepted for recycling "a piece of scrap metal" which defendants considered to be a motor vehicle. Plaintiff describes the piece as a "yellow and white shell of a Chevrolet van . . . that had no engine, no transmission, no wheels, no doors, no windows, no seats, no axels, just one fender, and

was brought in on a flatbed truck and not under its own power." Plaintiff concedes that it accepted the piece without complying with the requirements of section 42–4–2202 applicable to "motor vehicles."

Pursuant to C.R.C.P. 57 and 65(a), plaintiff sought a declaratory judgment concerning sections 42–4–2202 and 42–5–105, as well as injunctive relief. It argued that section 42–4–2202 is unconstitutional, either (1) on its face, because the statute is impermissibly vague or (2) as applied by defendants, because they ignore the statutory definitions of "motor vehicle" in sections 42–1–102(58) and 42–5–101(5), and the piece of scrap metal "does not visibly fit [either definition] as it was clearly not self-propelled or under its own power when it was brought in on the flatbed truck."

Plaintiff also contends that it is entitled to declaratory relief as to the scope of section 42–5–105, claiming that it is in imminent danger of prosecution based on defendants' stated interpretation of the statute. According to deposition testimony from officers of the Colorado Springs Police Department and the Colorado State Patrol, they intend to prosecute plaintiff under the statute if it fails to record serial or identification numbers of every used motor vehicle part it accepts. Alternatively, plaintiff contends that the statute is unconstitutionally vague if applied as interpreted by defendants.

Both parties moved for summary judgment. By order dated February 25, 2009, the district court granted defendants' motion, concluding that section 42–4–2202 is constitutional because the term "self-propelled vehicle" as used in section 42–1–102(58) is sufficiently clear on its face, and declining to adopt plaintiff's "personal hypertechnical definition of 'self-propelled.'" Although the court purportedly dismissed all of plaintiff's claims, it did not state its reasons for dismissing the claims based on section 42–5–105.

Both parties filed motions to reconsider, but before the motions were decided, plaintiff filed a notice of appeal. Although no motion was filed in this court challenging whether a final judgment had been entered,

it is apparent that the appeal was premature as not all of plaintiff's claims had been ruled on. The premature appeal did not divest the district court of jurisdiction. *See Musick v. Woznicki,* 136 P.3d 244, 246 (Colo.2006).

On May 5, 2009, with a different judge presiding, the district court ruled on the motions to reconsider. The district court concluded that section 42–4–2202 is not impermissibly vague, because people of common intelligence do not have to guess as to the meaning of the term "motor vehicle," nor are defendants applying section 42–4–2202 in an unconstitutional manner because their interpretation is consistent with the legislature's intent. With regard to plaintiff's challenge to section 42–5–105, the court concluded that since plaintiff has not been charged with violating the statute, there is no case or controversy warranting a legal declaration. It also rejected plaintiff's argument that it did not have to locate and record serial numbers of used motor vehicle parts. Therefore, the court entered judgment as a matter of law in favor of defendants on all of plaintiff's claims.

The ruling of May 5, 2009 resolved all the claims and perfected this appeal. The parties refer to both the original and supplemental orders in their briefs, and both orders form the basis of this appeal.

## II. Standard of Review

"We review de novo the district court's grant of a motion for summary judgment." *Burbach v. Canwest Inv., LLC,* 224 P.3d 437, 439 (Colo.App.2009) (citing *A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 865 (Colo.2005)). "We also review de novo questions of statutory interpretation." *Burbach,* 224 P.3d at 439 (citing *Clyncke v. Waneka,* 157 P.3d 1072, 1076 (Colo.2007)). A person challenging the constitutionality of a statute has the burden of proving that it is unconstitutional beyond a reasonable doubt. *E–470 Pub. Highway Auth. v. Revenig,* 91 P.3d 1038, 1041 (Colo. 2004).

## III. Section 42–4–2202

Based on the definitions of "motor vehicle" in sections 42–1–102(58) and 42–5–101(5),

plaintiff seeks a declaratory judgment that the General Assembly intended section 42–4–2202 to apply only to "self-propelled" vehicles or non-rail vehicles "propelled by any power other than muscular," and that this definition excludes a "scrap partial vehicle shell." Alternatively, plaintiff contends that if section 42–4–2202 is not so limited, it is unconstitutionally vague on its face. We are not persuaded that the statute is void for vagueness on its face, or as applied to plaintiff in the one situation challenged in this case.

## A. Vagueness Principles

We first set forth the legal principles applicable to analysis of whether a statute is unconstitutionally vague.

"A statute that forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess as to its meaning and differ as to its application" is unconstitutional. *Smith v. Charnes,* 728 P.2d 1287, 1290 (Colo.1986). "Conversely, a statute satisfies the requirements of due process when it provides fair notice of the conduct that has been determined to be unlawful." *Id.; see also Skilling v. United States,* — U.S. —, —, 130 S.Ct. 2896, 2927–28, 177 L.Ed.2d 619 (2010) ("To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'") (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983))).

"We also recognize that statutory terms should be construed in a manner that avoids constitutional infirmities." *People v. Zapotocky,* 869 P.2d 1234, 1240 (Colo.1994). "Thus, if a statute is capable of alternative constructions, one of which is constitutional, then the constitutional interpretation must be adopted." *Id.* Before striking a statute as impermissibly vague, a court should consider "whether the prescription [of the statute] is amenable to a limiting construction." *Skilling,* — U.S. at —, 130 S.Ct. at 2929; *see Hooper v. California,* 155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895) ("The elemen-

tary rule is that *every reasonable construction* must be resorted to, in order to save a statute from unconstitutionality." (emphasis added)). We may sustain a facial vagueness challenge only where the enactment is impermissibly vague in all of its applications. *People v. Hickman*, 988 P.2d 628, 643 (Colo. 1999).

■■■ Also, due process of law has never required mathematical exactitude in legislative draftsmanship. *See People v. Blue*, 190 Colo. 95, 99, 544 P.2d 385, 388 (1975). A provision is not unconstitutionally vague simply because it could have been drafted with greater precision. *Bd. of Educ. v. Wilder*, 960 P.2d 695, 703 (Colo.1998). "A statute must be sufficiently specific in order to give fair warning of the conduct prohibited and, simultaneously, sufficiently general to address the essential problem under varied circumstances and during changing times." *Colo. Auto & Truck Wreckers Ass'n v. Dep't of Revenue*, 618 P.2d 646, 651 (Colo.1980) ("Without purporting to cabin the statutory language employed in section 42–6–134, it is apparent that the term 'salvage,' in its statutory context, connotes the secondary or scrap value of a motor vehicle stemming from a state of damage or disrepair that renders the vehicle unsuitable for its originally intended use on the public highways, in the absence of major alteration or repair.").

■ Ultimately, the degree of vagueness tolerated by the Constitution, and the level of scrutiny a court must use in reviewing a vagueness challenge, depend on the nature of the enactment being challenged. *Wilder*, 960 P.2d at 704 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), and *Parrish v. Lamm*, 758 P.2d 1356, 1366 (Colo.1988)). Discussing the factors identified in *Flipside*, the supreme court in *Parrish* held that a less strict vagueness test,

and thus less exacting standards of specificity, are applied, when the statute at issue regulates economic transactions, imposes civil penalties, or contains a scienter requirement. By contrast, a stricter vagueness test, and thus more exacting standards of specificity, are applied when the statute imposes criminal penalties. However, the most important factor is whether the statute threatens to inhibit the exercise of constitutionally protected rights. If it does, then a stricter test applies; if it does not, then a less strict test applies. *Parrish*, 758 P.2d at 1366.

■ In any event, the standards for evaluating a vagueness challenge are not applied mechanically, nor will a mere tally of these factors suffice. *Id.*

### B. Analysis

#### 1. Facial Challenge

■■ Applying the above principles, we conclude that a less strict vagueness test must be applied to section 42–4–2202, and the statute is not void for vagueness on its face.

On the one hand, the statute at issue here is essentially an economic regulation, which militates in favor of applying a less strict standard. On the other hand, it imposes criminal penalties and it does not appear to have a scienter requirement, factors which militate in favor of a stricter test.[2]

■ Yet, where a criminal statute regulates economic activity, it generally "is subject to a less strict vagueness test, because its subject matter is more often narrow and because businesses can be expected to consult relevant legislation in advance of action." *United States v. Sun*, 278 F.3d 302, 309 (4th Cir.2002) (quoting *United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir.1998)). Even in the analysis of a criminal statute, the su-

---

**2.** Although the explicit language of the statute does not expressly require a mental state, "legislative silence does not always indicate a strict liability offense because the statute may imply a culpable mental state." *People v. Manzo*, 144 P.3d 551, 556 (Colo.2006). Construing other statutes, the supreme court has held that the mens rea of "knowingly" applies to an act enunciated in a statute defining the offense when the

statute does not specify a culpable mental state. *Gorman v. People*, 19 P.3d 662, 666 (Colo.2000). Based on our analysis, we need not resolve whether use of the word "shall" in section 42–4–2202(2)(a) creates strict liability as the court concluded in *Manzo*, or whether the requisite mental state is "knowing" conduct, as suggested by *Gorman*.

preme court has held that where the statute does not burden protected speech, the constitution permits a greater degree of vagueness. *People v. Baer,* 973 P.2d 1225, 1233 (Colo. 1999). Moreover, although the statute imposes criminal penalties, and does not appear to have a definite scienter requirement, avoidance of criminal liability and compliance with the statute are not huge burdens because the statute requires only that a recycler hold a vehicle for seven days and submit the VIN number to a centralized data system.

■ Finally, and most importantly under this analysis, section 42–4–2202 does not inhibit the exercise of constitutionally protected rights. Thus, we apply a less strict vagueness test here.[3]

We conclude that the statute is not "impermissibly vague in all of its applications." *Hickman,* 988 P.2d at 643. Plaintiff does not argue that the recycling statute cannot be applied to a vehicle that is readily identified as a motor vehicle and arrives at the recycler "under its own power." Thus the statute is not vague in all its applications.

■ We further agree with the district court that the definition of "motor vehicle" in section 42–1–102(58) is controlling and that the alternative definition found in section 42–5–101(5) is not. The definitions contained in section 42–1–102 are expressly applicable to articles 1 through 4 of the title, and section 42–4–2202 is found in article 4. Although the definition in section 42–1–102(58) is one used generically throughout the motor vehicle code, and could have been drawn more precisely to fit the purposes of the recycling statute, the lack of "mathematical" certainty alone does not render the statute unconstitutionally vague. The statute must be drawn broadly enough to address varying circum-

stances and changing times, and use of the statutory definition applicable to motor vehicles in general accomplishes that purpose.

Moreover, because the statutory definition of "motor vehicle" also excludes specific types of vehicles which might otherwise fall within a generic definition (e.g., low-power scooters, wheelchairs, farm tractors, and off-highway vehicles), use of the statutory definition actually narrows the category of items about which plaintiff must be concerned.

■ Furthermore, we reject plaintiff's position that the phrase "self-propelled vehicle" excludes a motor vehicle that is not in good working order at the time it is brought to a recycler. Part 22 of article 4 is titled "Recycling Motor Vehicles," and in this part, "recycling" means "[c]rushing or shredding a motor vehicle to produce scrap metal that may be used to produce new products" or "[d]ismantling a motor vehicle to remove reusable parts prior to recycling the remainder of the vehicle." § 42–4–2201(4), C.R.S. 2010. Because a vehicle purchased or otherwise received for crushing, shredding, or dismantling in many, if not most, instances will no longer be operable, it would be illogical to limit the statutory provisions to vehicles in good working order. *Frazier v. People,* 90 P.3d 807, 811 (Colo.2004) ("A statutory interpretation leading to 'an illogical or absurd result will not be followed.").

Plaintiff characterizes defendants' position as "a car is a car." This is not far off the mark, for in the context of recycling motor vehicles, a person of common intelligence usually can identify a motor vehicle when he or she sees one. *See Slack v. Farmers Ins. Exchange,* 5 P.3d 280, 284 (Colo.2000) (when interpreting a statute, "we must look to the plain meaning of the words employed"). Under a plain reading of section 42–4–2202, we

---

**3.** Neither *Flipside, Parrish,* nor *Wilder* delineates explicitly how a less strict vagueness test is to be applied. After describing the factors which contribute to the less strict test, *Flipside* appears to analyze whether the provision at issue is impermissibly vague in all of its applications. 455 U.S. at 497–501, 102 S.Ct. 1186. After describing the less strict test as set forth in *Flipside, Parrish* states that "[t]o succeed in a vagueness challenge, the complaining party must show that the statute is impermissibly vague in all of its appli-

cations." 758 P.2d at 1367; *see also High Gear & Toke Shop v. Beacom,* 689 P.2d 624, 631 (Colo. 1984) (citing *Flipside* and stating that since the statute at issue does not inhibit the exercise of constitutionally protected conduct, the appellants must demonstrate that the law is impermissibly vague in all of its applications). However, under Colorado jurisprudence, even a criminal statute may not be found unconstitutionally vague unless it is vague in all of its applications. *Hickman,* 988 P.2d at 643.

cannot agree that the term "motor vehicle" excludes any motor vehicle that no longer operates under its own power.

In contrast, plaintiff's position might be characterized as "a car is not a car if some parts are missing and it is no longer self-propelled." As noted by the district court, such a definition "would allow a thief to merely remove the motor or wheels and have [the motor vehicle] declared 'parts,' thus defeating the intent of the statute." *See Slack,* 5 P.3d at 284 (when interpreting a statute, "we adopt the construction that best gives effect to the legislative scheme"); *see also Zapotocky,* 869 P.2d at 1238 ("A court also may consider the consequences of a particular construction when determining the legislature's intent."). Applying the statute in the manner plaintiff suggests would not best effectuate the purposes of the General Assembly to reduce auto theft, as it would allow avoidance of the statute by merely rendering a stolen vehicle inoperable.

Finally, we note that statutory terms should be construed in a manner that avoids constitutional infirmities, and we must consider whether the "prescription is amenable to a limiting construction." *Skilling,* —— U.S. at ——, 130 S.Ct. at 2929–30.

Applying these principles, we conclude that in the context of the motor vehicle recycling statutes, the definition of a motor vehicle contained in section 42–1–102(58)—"any self-propelled vehicle that is designed primarily for travel on the public highways"—connotes any vehicle that is or was self-propelled. We find support for this interpretation in the introductory language to the section containing the definition of "motor vehicle," which states that the definitions apply "unless the context otherwise requires." The recycling statute presents a situation where the context "otherwise requires" the application of a nonliteral, non-"hypertechnical" definition of a motor vehicle.

Accordingly, because we conclude that the definition of "motor vehicle" in the context of the recycling statute, read as a whole, means a motor vehicle that is or was self-propelled, a person of common intelligence does not have to guess at the meaning of the term "motor vehicle" and arbitrary and discriminatory enforcement is not likely. Because plaintiff's "hypertechnical" definition would undermine the legislature's intent and defeat the purpose of the statute, we conclude that plaintiff has not shown beyond a reasonable doubt that section 42–4–2202 is unconstitutionally vague on its face.

### 2. As Applied Challenge

 We also conclude that section 42–4–2202 is not unconstitutional as applied to plaintiff. If a statute survives a challenge to its facial constitutionality, a litigant may succeed on a vagueness claim only by demonstrating that the statute is impermissibly vague as applied to him or her. *Kruse v. Town of Castle Rock,* 192 P.3d 591, 600 (Colo. App.2008); *Baer,* 973 P.2d at 1233. Put another way, plaintiff must show that the statute does not "with sufficient clarity, prohibit the conduct against which it is enforced." *People v. Shell,* 148 P.3d 162, 173 (Colo.2006) (quoting *People v. McIntier,* 134 P.3d 467, 475 (Colo.App.2005)). Thus we must examine whether plaintiff's conduct is clearly proscribed by the statute. *Baer,* 973 P.2d at 1233. If the statute clearly applies to plaintiff's conduct, its challenge to the statute must fail. *Wilder,* 960 P.2d at 704. Further, an "as applied" challenge may not succeed if it is based on a litigant's erroneous interpretation of the scope of the statute. *Baer,* 973 P.2d at 1233.

Plaintiff's attempt to draw a meaningful distinction between a "motor vehicle" and the "scrap partial vehicle shell" it was cited for accepting is unavailing because plaintiff erroneously interprets the definition of "motor vehicle," as discussed above. Plaintiff argues that since the "scrap partial vehicle shell" arrived at its place of business on a flatbed truck and not under its own power, it does not fit the definition of a motor vehicle. However, plaintiff does not dispute that the Chevrolet van was once "self-propelled." Nor does it argue that the van otherwise fails to meet the definition of "motor vehicle" found at section 42–1–102(58).

To determine whether a challenged statute applies to a plaintiff's conduct, or to a particular set of facts, the court itself examines the

conduct or the facts. *See Kruse,* 192 P.3d at 600–01 (court determined that plaintiff's house fit criteria of a property having "overwhelming historic importance to the entire community"); *Cooper v. Civil Service Comm'n,* 43 Colo.App. 258, 261, 604 P.2d 1186, 1188–89 (1979) (court determined whether police officer's action violated regulation providing "[o]fficers shall not unnecessarily draw or display firearms").

In this case, plaintiff itself describes the van as "the yellow and white shell of a Chevrolet van." A Chevrolet van is a motor vehicle and an examination of the photographs of the "yellow and white shell of a Chevrolet van" confirms that it is identifiable as a motor vehicle, as that term is properly construed in the context of motor vehicle recycling. Therefore, we conclude, this van remained a motor vehicle even though parts of it were missing and it was no longer operable.

Thus, plaintiff has not shown beyond a reasonable doubt that the application of section 42–4–2202 in this situation was unconstitutional, and the district court correctly determined that plaintiff is not entitled to declaratory relief on this issue.

### IV. Section 42–5–105

Plaintiff has not been cited for violating section 42–5–105. However, it argues that it is in imminent danger of prosecution based on defendants' statements that they intend to enforce the statute against it, and therefore its claim for declaratory relief is ripe. Defendants' representatives have testified that they intend to cite plaintiff for violating the statute if it fails to record identification numbers on every used motor vehicle part it accepts. Plaintiff seeks a declaratory judgment that the statute "contains no requirement that the identification numbers on all 'motor vehicle equipment, attachments, accessories, or appurtenances' be recorded as part of the daily record." Plaintiff argues in the alternative that the "daily record" law is unconstitutionally overbroad and vague on its face if it is applied in such a manner.

■ Because we agree with plaintiff's argument that the statute does not require recording identification numbers for every used motor vehicle part it accepts, we (1) reverse the summary judgment in defendants' favor as to this part of plaintiff's claim, and (2) do not reach plaintiff's alternative argument.

■ Under the Uniform Declaratory Judgments Law, as adopted in Colorado, an interested person may have determined any question of construction or validity arising under a statute and obtain a declaration if the person's rights, status, or other legal relations are affected by the statute. § 13–51–106, C.R.S.2010; *see also* C.R.C.P. 57(b); *Rector v. City & County of Denver,* 122 P.3d 1010, 1017 (Colo.App.2005). This statute affords parties judicial relief from uncertainty and insecurity in legal relations, and it is to be liberally construed. *Mt. Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231, 240 (Colo.1984).

■ However, a declaratory judgment proceeding must be based on an actual controversy. *Community Tele–Communications, Inc. v. Heather Corp.,* 677 P.2d 330, 334 (Colo.1984). In addition, "[t]he doctrine of ripeness requires 'an actual case or controversy between the parties that is sufficiently immediate and real so as to warrant adjudication.'" *Jessee v. Farmers Ins. Exchange,* 147 P.3d 56, 59 (Colo.2006) (quoting *Beauprez v. Avalos,* 42 P.3d 642, 648 (Colo.2002)). Courts "will not consider uncertain or contingent future matters because the injury is speculative and may never occur." *Jessee,* 147 P.3d at 59. "In deciding ripeness, courts look to the hardship of the parties of withholding court consideration and the fitness of the issues for judicial decision." *Stell v. Boulder County Dep't of Social Servs.,* 92 P.3d 910, 914–15 (Colo.2004). "To be fit, there must be an adequate record to permit effective review." *Id.* at 915.

Section 42–5–105 plainly requires that plaintiff keep a record of all transactions in "secondhand or used motor vehicle equipment, attachments, accessories, and appurtenances," § 42–5–105(1)(a), and specifies that the record "shall contain ... [a] description of any and all such articles of property ... sufficient for the ready identification thereof by a peace officer," § 42–5–105(1)(b)(I).

However, the statute requires recording "vehicle identification numbers" of only motor vehicles themselves. *See* § 42–5–105(1)(b)(V). As noted above, the term "motor vehicle," as used in this statute, is defined in section 42–5–101(5). Plaintiff's current practice is to take photographs of motor vehicle parts delivered to its business but not to separately record any VIN numbers.

Here, defendants' representatives have testified that plaintiff could be cited for not recording part identification numbers even though the plain language of section 42–5–105 does not impose such a requirement. Plaintiff seeks a declaration that it is not required to record such numbers and states that in the absence of a declaratory judgment, it "will be forced to forego business transactions involving [used motor vehicle parts], rather than face the imminent threat of criminal penalties being imposed upon its employees engaged in such transactions." Thus, although plaintiff has not been cited under section 42–5–105, there is a reasonable possibility that it could be cited for not recording part identification numbers. *See Jam Action, Inc. v. Colorado State Patrol,* 890 P.2d 210, 212 (Colo.App.1994) (case was appropriate for declaratory relief even though State Patrol had taken no action to enforce its announced policy nor any "adverse action" against plaintiffs). Defendants asserted at oral argument that the individual law enforcement personnel who testified that they would enforce the statute against plaintiff are no longer employed by the defendant city, and there is presently no budget for such enforcement efforts. But even if we assume these facts are true, they do not preclude other officers from taking the same position or enforcing the law in the future and therefore do not moot plaintiff's claims.

■ Unlike the district court, we conclude that there is an actual case or controversy here as well as an adequate record for us to review, at least with regard to the recording of part identification numbers. A court may find "a conflict is ripe for judicial review even in the context of uncertain future facts so long as there is no uncertainty regarding the facts relevant to the dispute and no pending actions that might resolve the issue prior to the court's determination." *Stell,* 92 P.3d at 915 n. 6.

Therefore, we disagree with the district court as to the ripeness of this part of the controversy under section 42–5–105. We reverse a portion of the summary judgment and direct the district court to grant part of the relief requested by plaintiff—a declaration that section 42–5–105 does not require it to record a "vehicle identification number," as defined in section 42–5–101(11), other than for "motor vehicles," as defined in section 42–5–101(5).

Because of the limited record before us and the fact that plaintiff has not been prosecuted under section 42–5–105, we conclude that plaintiff's challenge to other aspects of the statute is not ripe, and other than as set forth above, we affirm the district court's order. Thus, we express no opinion as to whether plaintiff's current practice of taking photographs of motor vehicle parts is sufficient to comply with the statutory requirement that it keep a "permanent daily record of all secondhand or used motor vehicle equipment, attachments, accessories, and appurtenances" or whether it comports with the statutory requirement that the description be "sufficient for the ready identification thereof by a peace officer."

Based on our conclusion, we also do not reach plaintiff's alternative argument.

## V. Appellate Costs

Because we affirm in part and reverse in part, defendants' request for costs incident to this appeal is denied. C.A.R. 39(a).

## VI. Conclusion

The judgment of the district court is reversed as to plaintiff's claim that section 42–5–105(1)(b)(V) applies only to "motor vehicles" as explained above, and the case is remanded to the district court with directions to enter a declaratory judgment accordingly. The judgment is affirmed in all other respects.

Judge TAUBMAN and Judge NEY * concur.