COLORADO COURT OF APPEALS
 
 
 2015 COA 171
 
 
 
 
 
 
 
 

 

Court of Appeals No. 12CA1339
Douglas County District Court No. 11CR143
Honorable Richard B. Caschette, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cory James Komar,

Defendant-Appellant.

JUDGMENT AND SENTENCE AFFIRMED
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE RICHMAN
Furman and Plank*, JJ., concur

Announced December 3, 2015

Cynthia H. Coffman, Attorney General, Majid Yazdi, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Porter-Merrill, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

 

¶1        Defendant, Cory James Komar, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault. He also appeals his sentence, the characterization of his offense as a class 3 felony on the mittimus, and the manner of designating his status under the sexually violent predator (SVP) determination. We affirm the judgment and sentence, and we remand for correction of the mittimus.

I. Background

¶2        Defendant was convicted of sexual assault in violation of section 18-3-402(1)(a), C.R.S. 2015, by causing submission of the victim by means of sufficient consequences reasonably calculated to cause submission against her will. Because the jury found in a special interrogatory that defendant did not use physical force, the conviction was for a class 4 felony. The jury found defendant not guilty of sexual assault of a helpless victim under section 18-3­402(1)(h).

¶3        The mittimus erroneously recorded the conviction as a class 3 felony. The postconviction evaluation by the Sex Offender Management Board concluded that defendant did not meet the criteria of an SVP, but the mittimus noted only that there was no SVP finding. Defendant was sentenced to sex offender intensive supervised probation under the Sex Offender Lifetime Supervision Act of 1998 (SOLSA), §§ 18-1.3-1001 to -1012, C.R.S. 2015.

¶4        The evidence at trial supported the following undisputed facts. M.A., the victim, celebrated her twenty-first birthday with several others, including Joshua Thurston, Jessica Hasenbalg, Cody Halbrook, and defendant, drinking heavily at a bar to the point of intoxication. Thereafter, she went with some of her friends to Halbrook’s house, where she went to bed in a severely intoxicated state. Defendant, who was also intoxicated, subsequently entered the bedroom and engaged in sexual intercourse with M.A.

¶5        The trial witnesses offered inconsistent testimony as to the surrounding circumstances.

¶6        M.A. testified that she awoke to find defendant engaging in sexual intercourse with her. She told him to stop, but he continued the assault. She screamed for help and for him to cease the assault. She tried to push him off of her, but he resisted, put more of his weight on her, held her down with his hands, and continued to sexually assault her. She testified that he remained on top of her until Thurston and Hasenbalg pulled him off of her.

¶7        Hasenbalg testified that she overheard M.A.’s repeated protests. At her direction, Thurston broke down the bedroom door. In contrast to M.A.’s testimony, Hasenbalg stated that she did not see defendant and M.A. lying down together. Rather, she saw M.A. “sitting up with a sheet wrapped around her” and defendant in his underwear, pulling his pants up. Thurston offered testimony consistent with Hasenbalg’s.

¶8        Defendant did not testify at trial. However, a videorecording of his statement to police was introduced. Referring to that statement, his attorney argued in closing that M.A. initially consented to the sexual encounter, but that she later withdrew her consent, at which point the encounter ended. Defendant’s theory of the case instruction stated his contention that he and M.A. engaged in consensual intercourse.

¶9        In support of this theory, defendant offered the testimony of Sean Conway, who was present at the Halbrook house. Conway testified that he overheard the sexual encounter for one to two seconds. Asked to “describe the type of sex,” he stated, “It was loud. It was a moan . . . .” He replied, “No” in answer to the question: “Did you hear someone cry out to say ‘stop’ or ‘get off’ or . . . ‘I want to go to sleep’ or something?” He answered, “Yes” to the question: “Did you hear a female voice?” However, he also stated, “I thought it was Cody [Halbrook] having sex . . . .”

¶10        Defendant also introduced the testimony of Mandy Stone, M.A.’s former friend, who testified that M.A. had a reputation for dishonesty and had, contrary to M.A.’s testimony, previously accused at least one person of sexual assault. Defendant sought to introduce Stone’s testimony that M.A. had previously accused three specific people of sexual assault, but the district court did not allow this testimony.

¶11        As noted, the jury found defendant guilty of sexual assault by causing the victim’s submission through means of sufficient consequence to overcome her will, a class 4 felony.

II. Issues on Appeal

¶12        Defendant first contends that we should vacate his conviction because the sexual assault provision of the statute pursuant to which he was convicted is unconstitutionally vague. He further contends that, even if we do not vacate his conviction on constitutional grounds, we should nonetheless reverse it because the district court erred by (1) incorrectly instructing the jury on the mens rea of the offense and (2) incorrectly limiting Mandy Stone’s testimony.

¶13        Defendant further contends that, even if we affirm his conviction, we should remand for resentencing because SOLSA, under which the district court sentenced him, is unconstitutional. Finally, defendant contends that, even if we affirm his conviction and sentence, we should remand for correction of the mittimus.

III. Analysis

A. Constitutional Challenge

¶14        Defendant argues that the “sufficient consequence” language of the sexual assault statute, § 18-3-402(1)(a), is unconstitutionally vague, both on its face and as applied to him. We address this claim first because if defendant is correct his conviction must be vacated and he may not be retried.

1. Background

¶15        Following conviction, defendant filed a motion for judgment of acquittal in which he argued, inter alia, that the sexual assault statute under which the jury convicted him was unconstitutionally vague. The statute states:

(1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if:

(a) The actor causes submission of the victim by means of sufficient consequence reasonably calculated to cause submission against the victim’s will . . . .

§ 18-3-402.

¶16        Defendant supported his vagueness argument by noting that during the deliberations the jury requested a definition of the phrase “sufficient consequence.”[1] He further argued that the statute was vague as applied to him because it did not address the circumstance where an intoxicated individual may recognize and respond more slowly to an assertion of nonconsent than a sober person.

¶17        Relying on People v. Smith, 638 P.2d 1 (Colo. 1981), the district court rejected defendant’s facial challenge to the “sufficient consequence” language of the statute. The district court also rejected defendant’s as-applied challenge, stating that defendant “fail[ed] to provide any basis for his assertion that an intoxicated individual should be treated differently by the law.” The district court acknowledged defendant’s assertion that the jury had asked a question concerning the “sufficient consequence” language, but it did not make any additional factual record.

2. Issue Preservation and Standard of Review

¶18        “The constitutionality of a statute cannot be decided on appeal if it has not been fairly presented to the trial court.” People v. Veren, 140 P.3d 131, 140 (Colo. App. 2005) (citing People v. McNeely, 68 P.3d 540, 545 (Colo. App. 2002)). “This is particularly true where the allegation is that the statute is unconstitutional as applied.” Id. “To support such a claim, it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied.” Id. (citing People v. Patrick, 772 P.2d 98, 100 (Colo. 1989)).

¶19        Here, defendant presented the issue of vagueness to the district court, and the district court acknowledged relevant facts that were already part of the trial record. Therefore, we conclude that defendant adequately preserved the issue for our review. “We review the constitutionality of a statute, both facially and as applied, de novo.” People v. Lovato, 2014 COA 113, ¶12 (citing People v. Perez-Hernandez, 2013 COA 160, ¶10).

3. Facial Challenge

a. Applicable Law

¶20        “The vagueness doctrine is rooted in the right to due process of law, which requires that a law provide ‘fair notice of the conduct that has been determined to be unlawful.’” People v. Shell, 148 P.3d 162, 172 (Colo. 2006) (quoting Smith v. Charnes, 728 P.2d 1287, 1290 (Colo. 1986)). “Thus a law offends due process if ‘it does not provide fair warning of the conduct prohibited or if its standards are so ill-defined as to create a danger of arbitrary and capricious enforcement.’” Id. (quoting Parrish v. Lamm, 758 P.2d 1356, 1367 (Colo. 1988)); see also Johnson v. United States, 576 U.S. ___, ___, 135 S. Ct. 2551, 2556 (2015) (“Our cases establish that the Government violates this guarantee [of due process] by taking away someone’s life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.”). “Under this standard, a law ‘is not void for vagueness if it fairly describes the conduct forbidden, and persons of common intelligence can readily understand its meaning and application.’” Shell, 148 P.3d at 172 (quoting Parrish, 758 P.2d at 1367).

¶21        In People v. Barger, 191 Colo. 152, 550 P.2d 1281 (1976), and People v. Beaver, 190 Colo. 554, 549 P.2d 1315 (1976), the Colorado Supreme Court held that statutes criminalizing sexual conduct effectuated by threats of sufficient consequence reasonably calculated to overcome resistance were not unconstitutionally vague.[2] Relying in part on these cases, the Colorado Supreme Court held in Smith that the language “by any means of sufficient consequence reasonably calculated to cause submission” is not unconstitutionally vague in a sexual assault statute. 638 P.2d at 5.[3]Smith emphasized that “a penal statute framed so as to require the jury to determine a question of reasonableness ‘does not make it too vague to afford a practical guide to acceptable behavior.’” Id. (quoting Beaver, 190 Colo. at 556, 549 P.2d at 1316).

¶22        As the Smith court explained, the statutory language in question is not unconstitutionally vague because it

distinguishes between persons who obtain consent to sexual penetration and those who, by use of objectively sufficient means, threats or otherwise, cause nonconsensual submission. While threats of a serious nature are illustrative of means reasonably calculated to cause nonconsensual submission, the statute’s use of the broader term “any means” does not invalidate it so long as the jury must conclude that the defendant’s conduct was objectively of sufficient consequence to effect the prohibited result. Intelligible limits on the conduct proscribed are present in that requirement.

638 P.2d at 5 (footnote omitted).

b. Application

¶23        We conclude that Smith’s reasoning and holding apply here. Although the current sexual assault statute is enumerated differently, reorganizes the sexual assault crimes, and provides different classifications of the felonies addressed, it nonetheless contains essentially the same language and is a current codification of the statute applicable in Smith. We conclude, therefore, that the challenged language is not unconstitutionally vague.

¶24        Defendant argues that this case is distinguishable from Barger and Beaver, and hence Smith should not apply here as it relies on them. He further argues that this case is distinguishable from Smith because Smith focused on different statutory language. We disagree.

¶25        Defendant argues that Beaver and Barger are distinguishable from this case because the statutes addressed there provided greater guidance about what conduct constituted a violation of the statute by tethering the sufficient consequence language to a specific action — a threat — and because the statutes included examples of the type of conduct that constituted a greater offense. We disagree.

¶26        First, as explained in Smith, while threats of a serious nature are illustrative of means reasonably calculated to cause nonconsensual submission, the statute’s use of the broader term “any means” does not invalidate the statute so long as a jury must conclude that the conduct in question “was objectively of sufficient consequence to effect the prohibited result.” 638 P.2d at 5. Smith concluded that “[i]ntelligible limits on the conduct proscribed are present in that requirement.” Id.

¶27        Defendant argues that Smith is nonetheless distinguishable because the Smith court focused on the language “any means” rather than the language “of sufficient consequence.” While Smith initially did focus on the “any means” language, it did so, as it explained, because it relied on its earlier holdings in Barger and Beaver that language concerning threats of sufficient consequence reasonably calculated to overcome resistance were not unconstitutionally vague. As noted above, Smith ultimately considered the entire phrase “by any means of sufficient consequence reasonably calculated to cause submission” and held it not unconstitutionally vague. Id. at 5-6.

¶28        As was true of the statutes at issue in Smith, Beaver, and Barger, the statute at issue in this case contextualizes the relevant conduct prohibited under subsection (1) by contrasting it to the conduct described in subsection (4). Subsection (4) applies to sexual assault committed when the submission is caused by the actual application of physical force or physical violence or by threats of imminent death, serious bodily injury, extreme pain, or kidnapping, and it classifies these offenses as class 3 felonies. See § 18-3-402(4)(a), (b). If the actor does not use one of the means described in subsection (4), but nonetheless effects a sexual assault by causing submission of the victim by any other means of sufficient consequence reasonably calculated to cause submission, the offense is a class 4 felony. § 18-3-402(2). When the statute is read as a whole, these two subsections give context to each other, and a reasonable person is put on notice that a class 4 sexual assault is committed when causing submission by “means of sufficient consequence.” See Allstate Prods. Co. v. Colo. Dep’t of Labor & Emp’t, 782 P.2d 880, 882 (Colo. App. 1989) (when considering a vagueness challenge, a reviewing “court must read and consider a challenged statute as a whole” (citing Bauer v. Sw. Denver Mental Health Ctr., Inc., 701 P.2d 114 (Colo. App. 1985))).

¶29        Finally, defendant argues that the statute is unconstitutionally vague because it is unclear whether a person could cause submission for the purposes of the statute merely by persistence or negotiation. We are not persuaded by the hypothetical examples offered by defendant for the same reasons that such examples were rejected in Smith.

¶30        First, defendant here was not charged on the basis of such conduct. Second, we agree with Smith that “[d]isputes concerning the application of a criminal statute to marginal cases can be more meaningfully resolved according to the rules of strict construction of the statutory terms within the context of the specific facts of the case.” 638 P.2d at 6 (quoting People v. Garcia, 189 Colo. 347, 350, 541 P.2d 687, 689 (1975)).

¶31        “Only where the statute provides no discernible standards at all for defining any proscribed conduct should the harsh remedy of voiding a statute on its face be employed.” Id. (quoting Garcia, 189 Colo. at 350, 541 P.2d at 689). The statute at issue here does not fail in this respect.

4. As-Applied Challenge

a. Applicable Law

¶32        To prevail on an as-applied vagueness challenge, a defendant “must show that the statute does not ‘with sufficient clarity,

prohibit the conduct against which it is enforced.’” Metal Mgmt. W., Inc. v. State, 251 P.3d 1164, 1173 (Colo. App. 2010) (quoting Shell, 148 P.3d at 173). “Thus we must examine whether [the defendant’s] conduct is clearly proscribed by the statute.” Id. (citing People v. Baer, 973 P.2d 1225, 1233 (Colo. 1999)). “If the statute clearly applies to [the defendant’s] conduct, [his] challenge to the statute must fail.” Id. (citing Bd. of Educ. v. Wilder, 960 P.2d 695, 704 (Colo. 1998)).

b. Application

¶33        The evidence supporting defendant’s conviction showed, at a minimum, that defendant continued to sexually penetrate M.A. after she explicitly and forcefully instructed him to stop. Imposing sexual penetration despite clear and affirmative nonconsent paradigmatically constitutes sexual penetration “by means of sufficient consequence reasonably calculated to cause submission.” § 18-3-402(1)(a).

¶34        Defendant argues that the statute is vague as applied to him because the jury asked the court to define “sufficient consequence.” The jury’s uncertainty, however, does not impact our conclusion that defendant’s conduct was “clearly proscribed by the statute.” Metal Mgmt., 251 P.3d at 1173.

¶35        Defendant further argues the statute is vague as applied to him because both he and M.A. were intoxicated and, under such circumstances, “the distinction between consensual and nonconsensual yielding is not easy to determine.” This argument largely duplicates defendant’s argument as to mens rea, discussed in more detail in Part III.B below. As we explain, the question presented to the jury was whether defendant caused M.A.’s submission by means reasonably calculated to overcome her will. While defendant’s intoxication could potentially make it more difficult to prove he knew what he was doing or exercised reasonable calculation, we fail to see how his intoxication should affect our conclusion that defendant’s conduct was “clearly proscribed by the statute.” Id. Accordingly, defendant cannot prevail on his as-applied challenge to the statute.

B. Jury Instruction

1. Background

¶36        Consistent with the statute, and using the language of the then-current model jury instruction, COLJI-Crim. 3-4:01 (2008), the district court instructed the jury that the elements of sexual assault are:

1. That the defendant

2. in the State of Colorado, at or about the date and place charged,

3. knowingly inflicted sexual penetration or sexual intrusion on the victim, and

4. caused submission of the victim by any means of sufficient consequence reasonably calculated to cause submission against the victim’s will.[4]

¶37        Defendant argues that the district court erred by failing to instruct the jury that the mens rea element of “knowingly” applies to the fourth element of sexual assault. Although including the word “knowingly” again in the fourth element would have made the instruction more precise, we conclude that in the absence of an objection, we need not reverse this conviction.

2. Standard of Review and Applicable Law

¶38        We “review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law.” Riley v. People, 266 P.3d 1089, 1092 (Colo. 2011). Because defendant did not object at trial to this jury instruction, we will reverse only if we find plain error. Hagos v. People, 2012 CO 63, ¶14.

¶39        “Instructions which accurately track the language of the statute and pattern instructions are generally sufficient.” People v. Gallegos, 260 P.3d 15, 26 (Colo. App. 2010) (quoting People v. Riley, 240 P.3d 334, 341 (Colo. App. 2009)). However, pattern instructions “are not to be used if they do not reflect the prevailing law.” Fed. Ins. Co. v. Pub. Serv. Co., 194 Colo. 107, 110, 570 P.2d 239, 241 (1977). “The trial court has the duty to instruct the jury properly on all matters of law, and the failure to do so with respect to the essential elements of the offense constitutes plain error.” People v. Stanley, 170 P.3d 782, 792 (Colo. App. 2007) (quoting People v. Freeman, 668 P.2d 1371, 1382 (Colo. 1983)).

¶40        However, “the defendant must ‘demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the [plain] error contributed to his conviction.’” People v. Miller, 113 P.3d 743, 750 (Colo. 2005) (quoting People v. Garcia, 28 P.3d 340, 344 (Colo. 2001)). Further, “an erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial.” Stanley, 170 P.3d at 792 (quoting Miller, 113 P.3d at 750).

3. Analysis

¶41        For sexual assault under section 18-3-402(1)(a), the mens rea “knowingly” applies to the conduct “caus[ing] submission of the victim by means of sufficient consequence reasonably calculated to cause submission against the victim’s will.” See Chambers v. People, 682 P.2d 1173, 1178 (Colo. 1984) (Referring to an earlier, but analogous, sexual assault statute, the court stated that “[t]he offense of first degree sexual assault requires that the actor have an awareness of his conduct and of the circumstance of the nonconsent of his victim.”); see also § 18-1-503(4), C.R.S. 2015 (“When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.”).

¶42        Although the instruction did not specifically tie “knowingly” to the last element of the offense, it did inform the jury that to convict it must find the sexual penetration had been achieved by means “reasonably calculated to cause submission against the victim’s will.” (Emphasis added.) The reasonable calculation component indicates that defendant must have actively considered that his conduct would overcome M.A.’s will not to engage in sexual intercourse with him. Cf. Smith, 638 P.2d at 5 n.7 (“[T]he phrase ‘of sufficient consequence reasonably calculated’ clearly implies that the actor must be aware that his or her conduct is sufficient in character and degree to be likely to cause nonconsensual submission.”). We conclude that in this context there is no meaningful difference between knowledge and reasonable calculation, and hence the district court adequately instructed the jury.

C. Limitation on Cross-Examination

¶43        Defendant next argues that the district court reversibly erred by sustaining the prosecutor’s objection to testimony concerning M.A.’s prior inconsistent statements and by limiting defense counsel’s questions concerning those statements because the testimony was admissible under section 16-10-201, C.R.S. 2015. We conclude that the district court erred, but the error was harmless and therefore not reversible.

1. Background

¶44        On direct examination by defense counsel, M.A. testified that she had never accused anyone other than defendant of sexual assault, and she specifically stated that she had never accused Levy Komar, defendant’s brother, or Cody Halbrook, the friend at whose house the incident occurred, of sexual assault. She further testified that no other individual had sexually assaulted her. M.A. stated that she knew Mandy Stone, that they had formerly been close friends, that she did not think she ever told Stone that Levy Komar had tried to sexually assault her, and that she had not told Stone that anyone else had tried to sexually assault her.

¶45        Defense counsel called Stone as a witness. Stone testified that she and M.A. had been “best friends,” but they were no longer friends “after this incident.” Asked whether she knew M.A.’s reputation for truth and veracity, Stone stated, “Unfortunately, yes.” Asked to explain, Stone indicated that M.A. was dishonest and this had been a strain on their friendship. She further stated that “this is not the first time [M.A.] has told me she has been raped.” The prosecutor objected. The district court sustained the objection but did not give a limiting instruction. Defense counsel asked Stone for M.A.’s “reputation of truth and veracity in the community” and Stone replied, “She lies.”

¶46        Stone testified that M.A. had told her previous to this incident that she had been sexually assaulted. Defense counsel asked, “Who did she said [sic] in the past has assaulted or raped her?” Stone began to answer, “Three different--,” but the prosecutor objected. The district court again sustained the objection but did not give a limiting instruction.

¶47        The court held a bench conference out of the presence of the jury concerning defense counsel’s line of questioning. Defense counsel stated that Stone would testify M.A. had told her Halbrook, Levy Komar, and a third man, Travis Reagan, had sexually assaulted her, and that this would show, in direct contradiction of M.A.’s testimony, that M.A. had made three false accusations of sexual assault in the past and was making a false accusation against defendant. Although defense counsel referred to CRE 405,[5]and stated that rule allows such examination “unless specifically limited,” it is apparent from the transcript that the parties were addressing the admission of inconsistent statements for the purpose of impeaching the victim.

¶48        The prosecutor argued, referring to CRE 613, that defense counsel had only laid sufficient foundation for a question where the witness was “presented with a specifics [sic] of the statement and given a chance to admit or deny.” Without identifying its legal basis, the district court ruled that defense counsel had laid sufficient foundation for some, but not all, of his questions. The district court instructed defense counsel that he could ask Stone, “Did [M.A.] ever tell you that Levy Komar, Cody . . . Halbrook, or anyone else sexually assaulted her [sic]?” (Emphasis added.) The district court further instructed defense counsel, “Then the answer will be either in the negative or the affirmative, and then there will be no follow-up questions as far as the specifics.”

¶49        Following the bench conference, defense counsel recalled Stone as a witness and asked her the question approved by the court. She answered, “Yes, Sir,” and defense counsel asked nothing further.

¶50During Stone’s testimony, M.A. remained available to testify as a rebuttal witness.

2. Applicable Law

¶51        Section 16-10-201 states:

(1) Where a witness in a criminal trial has made a previous statement inconsistent with h[er] testimony at the trial, the previous inconsistent statement may be shown by any otherwise competent evidence and is admissible not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact to which h[er] testimony and the inconsistent statement relate, if:

(a) The witness, while testifying, was given an opportunity to explain or deny the statement or the witness is still available to give further testimony in the trial; and

(b) The previous inconsistent statement purports to relate to a matter within the witness’s own knowledge.

¶52        The applicable foundational requirements are simply those set forth in the statute. See People v. Madril, 746 P.2d 1329, 1335 (Colo. 1987) (citing Ch. 44, sec. 1, § 39-10-201, 1972 Colo. Sess. Laws 238). When the requirements are satisfied, prior inconsistent statements are admissible for all purposes. Id. (citing Montoya v. People, 740 P.2d 992, 998 (Colo. 1987)).

¶53        “A trial court’s rulings on evidentiary issues are reviewed for
an abuse of discretion.” People v. Stewart, 55 P.3d 107, 122 (Colo. 2002). “A court abuses its discretion when its ruling . . . is based on an erroneous understanding or application of the law . . . .” People v. Thomas, 2014 COA 64, ¶15 (citing People v. Esparza-Treto, 282 P.3d 471, 480 (Colo. App. 2011)).

3. Issue Preservation

¶54        The People argue that defendant failed to preserve his claim on this issue to the extent he relies on section 16-10-201 because defendant did not cite that statute in his argument to the district court. We disagree.

¶55        Although defense counsel did not cite to the statute, he did argue that Stone’s testimony should be admitted because it impeached M.A.’s in-court testimony and went to show that M.A. had previously made false accusations of sexual assault. This goes to the subject matter of section 16-10-201. We conclude that this argument was sufficient for defendant to preserve his claim. See People v. Melendez, 102 P.3d 315, 322 (Colo. 2004) (“We do not require that parties use ‘talismanic language’ to preserve particular arguments for appeal, but the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it.” (quoting People v. Syrie, 101 P.3d 219, 223 n.7 (Colo. 2004))); see also Martinez v. People, 2015 CO 16, ¶14 (“An adequate objection allows the trial court a meaningful chance to prevent or correct the error and creates a record for appellate review.” (citing Melendez, 102 P.3d at 322)). Accordingly, we will apply a harmless error standard and only “reverse if the error ‘substantially influenced the verdict or affected the fairness of the trial proceedings.’” Hagos, ¶12 (quoting Tevlin v. People, 715 P.2d 338, 342 (Colo. 1986)).

4. Application

¶56        Defendant sought to introduce Stone’s testimony that M.A. had previously accused three different men of sexual assault, inconsistent with M.A.’s testimony that she had never accused anyone else of sexual assault. The foundational requirements of section 16-10-201 were satisfied because M.A. remained available to testify and the inconsistent statements related to matters within M.A.’s knowledge. Thus, the proposed testimony was admissible under section 16-10-201. Accordingly, the district court based its ruling “on an erroneous understanding or application of the law” and therefore abused its discretion when it excluded Stone’s testimony concerning M.A.’s prior statements. Thomas, ¶15.[6] We conclude, however, that the error was harmless.

¶57        First, the district court did admit Stone’s testimony that she considered M.A. dishonest and that M.A. had previously accused at least one person of sexual assault. Second, while the excluded testimony — that M.A. had previously accused all three individuals of sexual assault, one of whom had remained her friend — could have added to the challenge to M.A.’s credibility based on the admitted testimony, which suggested she had only accused one of them, we are not persuaded that the difference would have been significant because the admitted evidence already raised a serious question about the victim’s credibility. Moreover, the attack on M.A.’s credibility was at least partially effective. Although M.A. testified that defendant first sexually penetrated her while she was unconscious and then used physical force to sexually penetrate her when she resisted, the jury found defendant not guilty of sexual assault by the application of physical force or violence and not guilty of sexual assault on a helpless victim. This shows that the jury did not fully credit M.A.’s testimony.

¶58        Accordingly, we conclude that any error by the district court with respect to Stone’s testimony did not “substantially influence the verdict or affect the fairness of the trial proceedings” and was therefore harmless. Hagos, ¶12.

D. SOLSA

¶59        Defendant contends that SOLSA is unconstitutional and that we should therefore vacate his sentence under the act and remand the case for resentencing. Although defendant acknowledges that previous divisions of this court have already addressed these constitutional issues, he argues that those decisions were wrongly decided. We agree with the reasoning of the other divisions of this court that have upheld the act. See People v. Firth, 205 P.3d 445, 452 (Colo. App. 2008); People v. Lehmkuhl, 117 P.3d 98, 108 (Colo. App. 2004); People v. Dash, 104 P.3d 286, 290 (Colo. App. 2004); People v. Oglethorpe, 87 P.3d 129, 134 (Colo. App. 2003); People v. Strean, 74 P.3d 387, 395 (Colo. App. 2002).

¶60        To the extent defendant argues that SOLSA violates substantive or procedural due process, the equal protection clause, or the prohibition against cruel and unusual punishment, we reject his arguments for the reasons set forth in Dash, 104 P.3d at 290­93, Oglethorpe, 87 P.3d at 134-35, and Strean, 74 P.3d at 394-95.

¶61        We also conclude, contrary to defendant’s argument, that SOLSA does not violate defendant’s right to a jury determination of all facts under either Blakely v. Washington, 542 U.S. 296 (2004), or Apprendi v. New Jersey, 530 U.S. 466 (2000), because the jury did not specifically find that defendant will “continue to present a danger to the public [if] released from incarceration and supervision.” § 18-1.3-1001. The legislative declaration found at section 18-1.3-1001, on which defendant relies, is not a fact that enhances his sentence, but rather an explanation of the General Assembly’s rationale for adopting SOLSA.

¶62        We also reject defendant’s argument that SOLSA cannot constitutionally be applied to him because he was an “adolescent” at the time of his crime, and under cases such as Miller v. Alabama, 567 U.S. ___, ___, 132 S. Ct. 2455, 2465 (2012), adolescents must be treated differently. First, although Miller uses different terminology such as “adolescent,” “youth,” “child,” and “children” to describe the subjects of its analysis, in the end it is a case about juveniles, i.e. in Colorado, those who commit crimes under the age of eighteen. Defendant was not charged or tried as a juvenile in accord with section 19-1-103(18), C.R.S. 2015; rather, he was twenty years old when he committed the offense and therefore was tried and sentenced as an adult.

E. Correction of the Mittimus

¶63        Defendant contends, the People concede, and we agree that the mittimus incorrectly identifies his conviction as being for a more serious offense and that it improperly omits a finding as to whether he is an SVP.

¶64        First, as discussed above, the jury found defendant guilty only under section 18-3-402(1)(a), a class 4 felony, but his sentencing order reflects a conviction for sexual assault by overcoming the victim’s will through physical force or violence, a class 3 felony.

¶65        Second, the sentencing order identifies defendant’s sex offender status as “No SVP Finding.” However, section 18-3­414.5(2), C.R.S. 2015, required the district court to make an SVP finding. We note that defendant’s amended adult sex offender presentence report states that an SVP screening was completed and that the SVP criteria had not been met. Additionally, the Sex Offender Management Board evaluator who conducted defendant’s sex-offender evaluation stated that defendant “d[id] not meet the criteria for being classified as a sexually violent predator.”

¶66        “Clerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.” Crim. P. 36. Accordingly, we remand to the district court to correct the mittimus as to defendant’s offense and SVP status.

IV. Conclusion

¶67        The judgment and sentence are affirmed. The case is remanded for the district court to correct the mittimus to (1) reflect a conviction under section 18-3-402(1)(a) only, a class 4 felony; and (2) reflect an SVP finding.

JUDGE FURMAN and JUDGE PLANK concur.

[1]  In response to that question, the district court instructed the jury, “There is no legal definition. You are to use your collective wisdom and judgment, in light of the entire phrase in Instruction #15, element 4 and all other instructions, to define the term.”

[2] The statute addressed in People v. Barger stated:

that a male commits gross sexual imposition with a female person not his spouse if (h)e compels her to submit by any threat Less than those set forth in section 40-3-401(1)(a) (a threat of imminent death, serious bodily harm, extreme pain, or kidnapping, to be inflicted on anyone) but of sufficient consequence Reasonably calculated to overcome resistance . . . [.]

191 Colo. 152, 154, 550 P.2d 1281, 1283 (1976) (alteration in original) (emphasis added) (citation omitted).

The statute addressed in People v. Beaver stated:

a person commits deviate sexual intercourse by imposition if: (a) He compels the other person to participate by any threat Less than those set forth in section 40-3-403(1)(a), (a threat of imminent death, serious bodily harm,

extreme pain, or kidnapping, to be inflicted by anyone) but of sufficient consequence Reasonably calculated to prevent resistance. . . .

190 Colo. 554, 556, 549 P.2d 1315, 1316 (1976) (alteration in original) (emphasis added) (citation omitted).

[3] The statute addressed in People v. Smith stated:

Any actor who knowingly inflicts sexual penetration or sexual intrusion on a victim commits sexual assault in the second degree if:

(a) The actor causes submission of the victim to sexual penetration by any means other than those set forth in section 18-3-402(3) but of sufficient consequence reasonably calculated to cause submission against the victim’s will; or

(b) The actor causes submission of the victim to sexual intrusion by any means of sufficient consequence reasonably calculated to cause submission against the victim’s will . . . .

638 P.2d 1, 3-4 (Colo. 1981) (emphasis added) (footnote and citation omitted).

[4] The current model jury instruction, in contrast, does separate “knowingly” from the elements that follow:

 That the defendant, 
 in the State of Colorado, at or about the date and place charged, 
 knowingly, 
 inflicted sexual intrusion or penetration on a person, and 
 caused submission of the person by means of sufficient consequence reasonably calculated to cause submission against the person’s will.

COLJI-Crim. 3-4:01 (2014).

[5] CRE 405 addresses methods of proving character.

[6] We note that the district court appears to have based its ruling on CRE 613, which in contrast to section 16-10-201, C.R.S. 2015, “include[s] the foundation requirement that a witness must have denied or failed to remember the prior statement before it can be proved by extrinsic evidence.” Montoya v. People, 740 P.2d 992, 996 (Colo. 1987).