18CA2392 Peo v Hibbs 11-24-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA2392 Mesa County District Court No. 17CR1819 Honorable Valerie J. Robison, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Blake Hibbs, Defendant-Appellant. JUDGMENT AFFIRMED Division I Opinion by JUDGE DUNN Dailey and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 24, 2021 Philip J. Weiser, Attorney General, Trina Kissel, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellant Megan A. Ring, Colorado State Public Defender, Emily Hessler, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Blake Hibbs, appeals the judgment of conviction entered upon a jury verdict finding him guilty of giving false information to a pawnbroker and theft. We affirm. I. Background ¶ 2 Rent-A-Center allows customers either to rent merchandise temporarily or to acquire ownership through weekly, semi-monthly, or monthly rental payments. On August 16, 2017, Hibbs signed a Rent-A-Center rental purchase contract for a Dell laptop. The contract stated Hibbs didn’t own the laptop and “will not own” it until he made the total identified payments. It also prohibited Hibbs from selling, pawning, or disposing of the laptop. ¶ 3 On August 24th, Hibbs signed another Rent-A-Center rental purchase contract for an HP Omen laptop. Hibbs set up recurring electronic payments for both laptops, but Rent-A-Center received only one payment toward the Dell laptop. ¶ 4 Between August 22nd and September 15th, Hibbs pawned the Dell laptop three times.
1 Each time, Hibbs checked a box stating he owned the laptop but gave a different answer for how long he owned 1 Hibbs paid to retrieve the Dell laptop twice before pawning it the third time on September 15th. 
2 it — one month, three months, and an indecipherable mark next to “years.” ¶ 5 On September 15th, Rent-A-Center reported to the sheriff’s office that Hibbs had rented two laptops but hadn’t paid for them. After the investigating officer discovered the Dell laptop had been pawned, he recovered and returned it to Rent-A-Center. But he never found the Omen laptop. ¶ 6 The prosecution charged Hibbs with three counts of providing false information to a pawnbroker and one count of theft. Hibbs defended on the theory that (1) he didn’t knowingly give false information to the pawnbroker because he thought he owned the Dell laptop and (2) someone stole the Omen laptop “two or three weeks after” he rented it. ¶ 7 A jury convicted Hibbs as charged. The trial court then sentenced Hibbs to twenty months of probation and sixty days in jail unless he paid restitution. ¶ 8 Hibbs now challenges his conviction arguing (1) the prosecutor presented insufficient evidence that he knowingly gave false information to a pawnbroker; (2) the prosecutor committed misconduct during opening, closing, and rebuttal argument; (3) the 
3 trial court plainly erred by admitting certain evidence; and (4) the theft charge suffered from a constructive amendment or fatal variance. We address each contention in turn but see no reversible error. II. Pawnbroker Act ¶ 9 The prosecution charged Hibbs with three counts of providing false information to a pawnbroker under section 29-11.9-104(5), C.R.S. 2021. Under that statute, “[a]ny customer who knowingly gives false information with respect to the information required by section 29-11.9-103(1) commits . . . a class 6 felony.” § 29-11.9-
104(5)(d). And under section 29-11.9-103(1), C.R.S. 2021, A pawnbroker shall record the following information in a register, as described in section 18-16-105: The name, address, and date of birth of the customer and the driver’s license number or other identification number . . . ; the date, time, and place of the contract for purchase or purchase transaction; [and] an accurate and detailed account and description of each item of tangible personal property . . . . The pawnbroker shall also obtain a written declaration of the customer’s ownership, which shall state that the tangible personal property is totally owned by the customer . . . , how long the customer has owned the property, whether the customer or someone else found the property, and, if the property was found, the details of the finding. 
4 (Emphasis added.) ¶ 10 Hibbs contends (1) subsection 104(5) prohibits giving only false identification information to a pawnbroker (not false ownership information) and (2) even if the subsection prohibits giving false ownership information, the prosecution presented insufficient evidence to prove that he knowingly gave false information to the pawnbroker. A. False Information ¶ 11 Hibbs doesn’t dispute subsection 104(5) criminalizes the act of giving false information to a pawnbroker. But he argues “false information” is limited to the customer’s “identification” and not his “declaration of ownership.” We aren’t persuaded. ¶ 12 When a sufficiency claim depends on our interpretation of a statute, we review that issue de novo. McCoy v. People, 2019 CO 44, ¶ 37. And when construing a statute, “our primary purpose is to ascertain and give effect to the legislature’s intent.” Id. To do that, we look first to the statute’s plain language. People v. Huckabay, 2020 CO 42, ¶ 13. If the language is clear and unambiguous, we apply it as written and “will not resort to other interpretive aids.” Id. 
5 ¶ 13 The language of section 29-11.9-104(5) is plain and clear: it prohibits a person from knowingly giving false information “with respect to the information required by section 29-11.9-103(1).” And though Hibbs asks us to limit the information required by section 29-11.9-103(1) to a customer’s identification information, the statute plainly identifies both identification information and “a written declaration of the customer’s ownership” among the information that a pawnbroker must obtain. See People v. Richards, 23 P.3d 1223, 1225 (Colo. App. 2000) (“[T]here was ample proof establishing that defendant provided the pawnbroker with false information concerning his acquisition and ownership of the [property].”) (emphasis added).
2 ¶ 14 We thus are unpersuaded by Hibbs’s suggestion that we should treat the second half of section 29-11.9-103(1) differently than the first. And, indeed, Hibbs’s suggested interpretation is 2 Hibbs asks us to discount Richards because the division didn’t “address the issue presented here.” But Richards broadly concluded the legislature intended to punish those “who knowingly provide false information with respect to any item of information required by” the statute. People v. Richards, 23 P.3d 1223, 1225 (Colo. App. 2000). Since we agree, we see no reason to stray from Richards’ interpretation. 
6 inconsistent with certain purposes of the statute, including enabling law enforcement to track and recover stolen tangible personal property and assisting them in apprehending those trafficking in stolen tangible personal property. See Pro’s Closet, Inc. v. City of Boulder, 2019 COA 128, ¶ 15. If customers accurately identified themselves but then could freely pawn stolen items by giving false ownership information, there would be no meaningful way for pawnbrokers to determine that a customer owns property (or that the property isn’t stolen) — necessarily thwarting law enforcement’s ability to track and recover stolen property or apprehend those trafficking in stolen property. See id. We decline to interpret the statute in a manner that would lead to such an illogical result. See Frazier v. People, 90 P.3d 807, 811 (Colo. 2004) (“A statutory interpretation leading to an illogical or absurd result will not be followed.”). ¶ 15 We therefore conclude that section 29-11.9-104(5) prohibits providing false ownership information to a pawnbroker. 
7 B. Sufficiency of Evidence ¶ 16 We also reject Hibbs’s contention that the prosecution presented insufficient evidence that he “knew he did not own the [Dell laptop] when he pawned it.” ¶ 17 We review de novo whether sufficient evidence supports a conviction. People v. Perez, 2016 CO 12, ¶ 8. In doing so, we must determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational jury that the defendant was guilty beyond a reasonable doubt. Id. ¶ 18 We can’t, however, intrude upon the jury’s role as fact finder by reweighing the evidence. People v. Murray, 2018 COA 102, ¶ 28. Rather, it’s for the jury, not this court, to determine witness credibility and to weigh and resolve any evidentiary conflicts. People v. Plancarte, 232 P.3d 186, 192 (Colo. App. 2009). ¶ 19 To counter Hibbs’s theory that he mistakenly thought he owned the Dell laptop, the prosecution introduced Hibbs’s signed rental contract which plainly stated, “You do not own the property. You will not own the property until you have made the total number of payments and the total amount of such payments necessary to 
8 acquire ownership.” It also provided payment terms if Hibbs “choose[s] to acquire ownership,” and clearly stated that Rent-A-
Center retains title to the property and has the “right to possession of the property” if Hibbs breached the contract. Finally, the contract stated that Hibbs “cannot sell, mortgage, pawn, pledge, encumber, hock or dispose” of the property. ¶ 20 In addition to the contract, the Rent-A-Center store manager who rented the Dell laptop to Hibbs testified that he thoroughly explains the rental transaction with customers and the “main thing” he explains is that the customer does “not own the merchandise until [they] make the last payment.” ¶ 21 Viewing this evidence in the light most favorable to the prosecution — as we must — we conclude a reasonable juror could infer that Hibbs knew he didn’t own the Dell laptop and thus knowingly provided false information to the pawnbroker that he did. See People v. Lawrence, 2019 COA 84, ¶ 21 (“Evidence of a defendant’s intent is usually only proved by relying on circumstantial evidence.”), aff’d, 2021 CO 28. ¶ 22 Still, Hibbs points to other evidence that he says shows he didn’t knowingly provide false ownership information to the 
9 pawnbroker and the prosecution didn’t disprove his mistake of fact affirmative defense. To be sure, Hibbs testified that (1) he didn’t read the rental contract; (2) the manager didn’t tell him he didn’t own the laptop and couldn’t pawn it; and (3) he thought he owned the laptop. But again, it was for the jury — not this court — to determine witness credibility, weigh the evidence, and resolve any evidentiary disputes. People v. Poe, 2012 COA 166, ¶ 14. And the jury didn’t have to accept Hibbs’s version of events. See People v. Becker, 187 Colo. 344, 346-48, 531 P.2d 386, 388 (1975) (a jury doesn’t have to accept a defendant’s explanations for his actions). ¶ 23 We therefore conclude the prosecution presented sufficient evidence that Hibbs knowingly provided the pawnbroker with false ownership information of the Dell laptop.
3 3 Because we conclude the prosecution presented sufficient evidence to prove Hibbs provided false ownership information, we need not address his separate contentions that the evidence was insufficient to prove he knowingly provided false information about his identification or the length of ownership. See Richards, 23 P.3d at 1225 (concluding the legislature intended to punish those “who knowingly provide false information with respect to any item of information required” by the statute). 
10 III. Prosecutorial Misconduct ¶ 24 Next, Hibbs contends the prosecutor committed reversible misconduct by (1) expressing his personal opinion “on the evidence, guilt, and Hibbs’s credibility”; (2) minimizing “the seriousness of the conviction”; and (3) lowering the prosecution’s burden of proof. We disagree. ¶ 25 A prosecutor has wide latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts. People v. Maloy, 2020 COA 71, ¶ 61. And though it’s improper for a prosecutor to give their personal beliefs on a witness’s credibility, “counsel may properly argue from reasonable inferences anchored in the facts in evidence about the truthfulness of a witness’ testimony.” Domingo-Gomez v. People, 125 P.3d 1043, 1051 (Colo. 2005). We evaluate improper argument claims in the context of the argument as a whole and in light of the evidence presented. People v. Munsey, 232 P.3d 113, 123 (Colo. App. 2009). ¶ 26 In reviewing a claim of prosecutorial misconduct, we engage in a two-step analysis, determining, first, whether the prosecutor’s conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal under the 
11 proper standard of review. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). A. Personal Opinion ¶ 27 The prosecutor argued in closing argument: It’s my burden to prove each element and I’ll submit to you that I’ve proven these first two elements
4 [of providing false information to a pawnbroker] beyond a reasonable doubt. . . . . So did . . . Hibbs give false information to a pawn broker? I think it’s pretty clear that he did. You have Exhibits 1 and 2 in evidence, the rental agreements for the Dell laptop and the Omen laptop. They both say you do not own this property, you will not own the property until you have made the total number of payments. . . . . You might recall also from . . . Hibbs’[s] testimony that he said he wrote – scribbled in the years just because he wanted to get out of there quickly. But I think we all know that that’s not true because he didn’t write three months to get out of there quickly . . . . Hibbs knows what the word three means, and that’s exactly what he meant when he wrote that on the pawn slip . . . . He knows that he was . . . conveying to First National Pawn that he had owned this Dell laptop for some number of 4 The prosecutor was referring to “the defendant, in the State of Colorado at or about the date and place charged.” 
12 years when in fact he had rented it for less than one month. . . . . I would submit to you that I’ve proven all of these elements beyond a reasonable doubt. You heard [the Rent-A-Center manager] testify that . . . Hibbs did not pay as required and breached the lease. And he didn’t cooperate in returning the property. So I would submit to you that once he breached the lease and refused to return the laptop he was possessing the laptop without authorization. . . . . Did he act knowingly with regard to the theft of the Omen laptop? I would suggest that he did. Just looking at all of the other evidence in this case . . . there’s nothing to suggest that he wasn’t acting knowingly with regard to the laptop. Especially after [the] Deputy . . . told him that he had defaulted on his payments to Rent-A-Center. The Omen laptop was worth about $950.00 . . . . Hibbs paid very little on it and then never returned it. . . . . And later in rebuttal, the prosecutor argued: I think the first time when he claimed to have owned [the laptop] for a month is the most understandable. Perhaps he was rounding up. One week isn’t that far different from one month. But if you look at the next two they’re far less understandable. The very next day when he had the Dell laptop for one week he 
13 claimed to have owned it for three months. Then when he had owned it for less than one month he claimed to have owned it for some number of years. (Emphasis added.) ¶ 28 Hibbs contends that by using the phrases “I submit,” “I think,” and I suggest,” the prosecutor impermissibly opined on the evidence and Hibbs’s credibility. But viewed in context, the prosecutor was not expressing his personal opinion on Hibbs’s credibility or the evidence. Rather, each phrase was tied directly to the evidence and reasonable inferences that could be drawn from the evidence. And it’s not improper for a prosecutor to ask the jury to believe their version of events based on the evidence and legitimate inferences that could be drawn from that evidence. While it might be better practice to avoid personal pronouns, as used here, the argument was simply a comment on the evidence, which is fair. People v. Nerud, 2015 COA 27, ¶ 55; see also State v. Gibson, 31 A.3d 346, 349, 351 (Conn. 2011) (The prosecutor’s statement, “[d]id the defendant wilfully [fail] to appear in court . . . . I think he did,” was not improper expression of personal opinion because prosecutor “was attempting to persuade the jury to draw this inference from 
14 the circumstantial evidence of intent that he had just recited.”); Collier v. United States, 92 F. Supp. 2d 99, 107 (N.D.N.Y. 2000) (finding the prosecutor’s use of “rhetorical phrases” like “I submit” and “I suggest” not improper where the prosecutor was properly arguing the evidence, not his personal opinion). ¶ 29 Under these circumstances, we conclude the prosecutor’s statements were proper. B. Minimizing Seriousness of Conviction ¶ 30 We also disagree with Hibbs’s contention that the prosecutor improperly minimized the seriousness of the conviction. ¶ 31 The prosecutor began opening statement and closing argument with the comment that, “This isn’t the crime of the century, but it’s important that people are honest about owning the things that they sell.” The prosecutor also characterized the theft charge as “pretty straight forward” in closing argument. ¶ 32 Although Hibbs objects to these comments, arguing they minimized the seriousness of the charged crimes and a possible conviction, a prosecutor “may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance.” People v. Conyac, 2014 COA 8M, ¶ 132. The prosecutor’s comments here 
15 were such a rhetorical device and they didn’t suggest the charged crime wasn’t real or significant. Nor did they induce the jury to determine guilt on the basis of passion, prejudice, or some other improper basis. See People v. Collins, 250 P.3d 668, 678 (Colo. App. 2010). ¶ 33 Thus, we see nothing wrong with these comments. C. Burden of Proof Comment ¶ 34 Nor are we persuaded that the prosecutor impermissibly lowered the prosecution’s burden of proof when he told the jury that “[e]ven if it takes you a long time, that doesn’t necessarily mean you’re hesitating and have to find [Hibbs] not guilty.” ¶ 35 During his closing argument, defense counsel explained the state’s burden: A reasonable doubt is a doubt based upon reason and common sense which arises from a fair and rational consideration of all the evidence or lack of evidence in the case. It is a doubt which is not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves. That last bit is very useful. It’s a doubt that would cause reasonable people to hesitate to act in matters of importance to themselves. That’s how sure you have to be before you convict . . . Hibbs in this case. 
16 And in its rebuttal closing, the prosecutor responded: Reasonable doubt is a doubt based on reason and common sense. It’s a doubt which raises [sic] from a fair and rational consideration of all of the evidence or the lack of evidence in the case. It is a doubt which is not vague, speculative, or imaginary, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves. Now all of that language is in there. [Defense counsel] points you to the latter part of it, but the first part is just as important. You’re supposed to use your reason and common sense in this case. Your life experience. To that end, deliberation is not hesitation under the reasonable doubt instruction. . . . . Even if it takes you a long time, that doesn’t necessarily mean you’re hesitating and have to find . . . Hibbs not guilty. We want you to be deliberate and thoughtful in this process. ¶ 36 While we agree with Hibbs that attempts to explain reasonable doubt can be problematic generally, that’s not what happened here. Nothing in the prosecutor’s statements trivialized reasonable doubt or suggested the prosecution bore a burden of proof less than beyond a reasonable doubt. Cf. People v. Vialpando, 2020 COA 42, ¶¶ 55-56 (cert. granted Oct. 12, 2020). Rather, the prosecutor acknowledged and emphasized that his burden was proof beyond a 
17 reasonable doubt, accurately summarized the law, and fairly responded to defense’s counsel’s comment on hesitation. See People v. Lovato, 2014 COA 113, ¶ 63 (prosecutors are given wide latitude in replying to argument by defense counsel). That’s all proper. ¶ 37 Having concluded none of the prosecutor’s statements were improper, we necessarily reject Hibbs’s contention that they cumulatively require reversal. IV. Evidentiary Challenge ¶ 38 At trial, the prosecution introduced a Rent-A-Center business record showing Hibbs’s payment history for the laptops and Rent-A-
Center’s attempts to contact Hibbs. The document shows Rent-A-
Center attempted to contact Hibbs beginning on the payment due date in August 2017 and continuing through the end of September 2017.
5 ¶ 39 Hibbs did not object to the relevance of the document at trial. But he now contends the portion of the document showing 5 Specifically, it shows, among other things, the date and time of the calls, the “result” of the calls — mainly “Disconnected, “No Answer,” or “Voice Mail Full” — the payment due date, and how late the payment was. 
18 “attempts to contact” him “after the charged” offense date (between August 16th and September 15th) was irrelevant and misleading. We disagree. ¶ 40 Relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” CRE 401. Only relevant evidence is admissible. CRE 402. But even relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” CRE 403. ¶ 41 We review a trial court’s evidentiary rulings for an abuse of discretion. People v. Mendenhall, 2015 COA 107M, ¶ 60. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or misapplies the law. Id. ¶ 42 We first conclude the jury could infer from the complete document that Hibbs evaded Rent-A-Center’s attempts to contact him after he stopped making payments on the Dell laptop. Thus, the document is relevant to show Hibbs’s guilty conscience and his intent to retain the laptops without paying. See People v. Curtis, 
19 2014 COA 100, ¶ 52 (post-offense behavior may be admissible as evidence of consciousness of guilt); see also People v. Sharp, 104 P.3d 252, 256 (Colo. App. 2004) (intent to permanently deprive another of the use or benefit of a thing of value may be inferred from the defendant’s conduct and circumstances of the case); People v. Stewart, 739 P.2d 854, 856 (Colo. 1987) (same). ¶ 43 We also conclude that the document wasn’t unfairly misleading. Though Hibbs may be right that the document “bolstered the jury’s conclusion that [he] knew he did not own or have authorization to keep the laptops,” that’s a fair inference from the evidence. And “[e]vidence isn’t unfairly prejudicial simply because it damages the defendant’s case.” People v. Knapp, 2020 COA 107, ¶ 42. Nor did the document invite the jury to base its decision on an improper basis such as hatred, sympathy, retribution, contempt, or horror. See People v. Forgette, 2021 COA 21, ¶ 54. ¶ 44 Therefore, the court didn’t abuse its discretion by admitting this evidence. 
20 V. Alleged Variances ¶ 45 Finally, Hibbs contends the prosecution’s “evidence and argument” (1) constructively amended the theft charge and (2) created an impermissible variance. We see no reversible error. A. Legal Standards and Standard of Review ¶ 46 A charging document “is sufficient if it advises the defendant of the charges he is facing so that he can adequately defend himself and be protected from further prosecution for the same offense.” Campbell v. People, 2020 CO 49, ¶ 44 (quoting Cervantes v. People, 715 P.2d 783, 785 (Colo. 1986)). ¶ 47 There are two types of variances — a simple variance, which occurs when the charging terms are unchanged, but the evidence proves facts materially different from those alleged in the charging document, and a constructive amendment, which changes an essential element of the charged offense, thereby altering the substance of the charging document. Id. at ¶ 45. ¶ 48 We review de novo whether a variance occurred. People v. Deutsch, 2020 COA 114, ¶ 22. Hibbs didn’t raise these claims in the trial court. Therefore, if we conclude a variance occurred, we review for plain error and will reverse only if the error is obvious 
21 and so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. People v. Rediger, 2018 CO 32, ¶ 47.
6 B. Analysis ¶ 49 The prosecution charged Hibbs with theft under section 18-4-
401(1), (2)(e), C.R.S. 2021. The complaint and information alleged that Hibbs [b]etween and including August 16, 2017 and September 15, 2017 . . . unlawfully, and knowingly, took a thing of value, namely: computer(s), of Rent A Center . . . without authorization or by threat or deception, obtained, retained, or exercised control over; or knowing or believing it to have been stolen, received, loaned money by pawn or pledge on, or disposed of, a thing of value, namely: computer(s), of Rent A Center . . . and/or knowingly used, concealed, or abandoned the thing of value in such manner as to permanently deprive Rent A Center of its use or benefit.
7 ¶ 50 And at the end of trial, the court gave the following theft instruction: 6 Though Hibbs contends a constructive amendment is automatically reversible, we don’t address this contention because we conclude no constructive amendment occurred. 7 The prosecutor clarified at trial that the theft charge applied to the Omen laptop. 
22 1. That the defendant, 2. in the State of Colorado, at or about the date and place charged, 3. knowingly, 4. obtained, retained, or exercised control over anything of value of another, 5. without authorization or by deception, and 6. intended to deprive the other person permanently of the use or benefit of the thing of value, 7. and that the defendant’s conduct was not legally authorized by the affirmative defense in Instruction 14. (Emphasis added.) ¶ 51 Even though the complaint and jury instructions charged Hibbs with theft between August 16, 2017, and September 15th, 2017, Hibbs contends that evidence and argument that he never returned the Omen laptop “constructively amended the theft charge by altering an essential element: the date of the offense.” ¶ 52 But the prosecution didn’t argue the theft occurred on a different date, it simply presented evidence the Omen laptop was never found (which Hibbs didn’t contest). We don’t see how that changed an essential element of the theft charge. See People v. 
23 Huynh, 98 P.3d 907, 911-12 (Colo. App. 2004) (“Inasmuch as this variance relates only to the possible date or dates of defendant’s participation in the crimes, it does not warrant reversal as a constructive amendment to the charges.”). ¶ 53 Hibbs alternatively contends the prosecution’s argument and evidence that he never returned the laptop created an impermissible variance. But even if true, a simple variance requires reversal only if it prejudices a defendant’s substantial rights. E.g., People v. Rice, 198 P.3d 1241, 1246 (Colo. App. 2008); see § 16-10-
202, C.R.S. 2021. And though Hibbs contends the alleged variance “prejudiced, surprised, or hampered” him in preparing his defense, he doesn’t explain, and we don’t see, how it did. ¶ 54 For one thing, there couldn’t have been any surprise. Hibbs was on notice from the complaint that he was charged with theft of the Omen laptop. See People v. Pahl, 169 P.3d 169, 178 (Colo. App. 2006) (rejecting prejudice where the defendant did not allege he was unaware of essential facts that differed from the offense as charged). For another, whether the Omen laptop was returned or not didn’t affect Hibbs’s defense theory. He defended on the theory that the Omen laptop was stolen, so the prosecutor’s argument that 
24 it was never returned was consistent with — and didn’t hamper — his theory of defense. See Huynh, 98 P.3d at 911 (explaining a variance between the specific date of the offense alleged in the charging document and the date proved at trial isn’t fatal where it didn’t impair the defendant’s defense). ¶ 55 Finally, though Hibbs asserts “the variance also undermined [his] substantial right to a unanimous verdict,” he doesn’t explain how the fact the laptop wasn’t recovered affected unanimity. The prosecution charged Hibbs with theft of the Omen laptop and didn’t present evidence of multiple discrete acts. So there isn’t a reasonable likelihood that jurors would’ve disagreed on which act was committed. See People v. Archuleta, 2020 CO 63M, ¶ 21. ¶ 56 Given all this, we perceive no impermissible variances that prejudiced Hibbs’s substantial rights. VI. Conclusion ¶ 57 We affirm the judgment of conviction. JUDGE DAILEY and JUDGE KUHN concur.